# PUDE WADSWORTH v. STATE.

No. A-1425.   Opinion Filed March 22, 1913.

(130 Pac. 808.)

1. APPEAL—Briefs—Citations of Authority—State Reports. In citing the decisions of the Supreme Court of Oklahoma or of this court in their briefs attorneys must give the page and volume of the state reports on which the cases relied upon can be found.

2. JURY—Petit Jury Panel—Challenge—Jury Commissioners—Misconduct. (a) A challenge to the panel of petit jurors upon the ground of misconduct of the jury commissioners must state distinctly what the jury commissioners did in the selection of the jurors which was not authorized by law.

   (b) A challenge to the panel can only be founded upon a material departure from the directions of the law in respect to the drawing and the returning of the jury, or the intentional misconduct of the sheriff in the matter of summoning the same, and it must be shown in the challenge that the defendant has suffered some material prejudice thereby.

   (c) A substantial compliance with the law as to the manner in which jurors shall be selected and summoned is all that is required.

3. EVIDENCE—Former Testimony of Witness Since Deceased. (a) Where a witness has testified at an examining trial and has been cross-examined by the opposing party, and his evidence is taken down and signed by him, or is taken in shorthand and transcribed without signing, and is filed with the clerk of the district court by the examining magistrate, such written statement upon proof of the death of such witness may be used as a deposition without further identification or verification.

   (b) Where a witness has testified at an examining trial and has been cross-examined by the opposing party, and his testimony is taken down by a stenographer, but the provisions of section 6623, Comp. Laws 1909, have not been complied with, a purported copy of said testimony is not admissible in evidence unless the stenographer who took down the testimony of said witness testifies that such purported copy of the evidence is a true and correct copy of his notes of the testimony of such witness.

4. HOMICIDE—Sudden Affray—Imminent Peril—Intent—Justification. (a) Where a defendant voluntarily and willfully enters into a mutual combat in which he intentionally takes the life of his adversary, such killing will be none the less murder or manslaughter because the difficulty arose suddenly, or because the

defendant may have been reduced to imminent peril during the progress of said difficulty.

(b) It is the intention which prompts the act, and not the length of its duration, which makes the unlawful killing of a human being criminal.

(c) Every man is presumed in law to intend the natural and reasonable consequences of his acts, unless the circumstances raise a reasonable doubt as to what his intentions were.

(d) Next to honor, human life is the most precious thing this side of heaven. No man with unhallowed hands can be permitted to intentionally break into the sacred house of life and shed its priceless stream and then come clear upon the ground that he acted only upon a sudden impulse or difficulty.

(e) The intentional taking of human life can only be justified by the mandate of the law or upon the ground of necessity, but this necessity must not be caused by the intentional fault or wrongdoing of him who attempts to plead it.

(Syllabus by the Court.)

*Appeal from District Court, McIntosh County;
Preslie B. Cole, Judge.*

Pude Wadsworth was convicted of manslaughter, and he appeals. Affirmed.

There are no questions involved in this case which require a statement of the testimony.

*Claude A. Niles, J. B. Lucas,* and *Charles Burford,* for appellant.

*Chas. West,* Atty. Gen., for the State.

FURMAN, J. First. Counsel for appellant have filed an extensive brief in which they refer in general terms to a number of cases decided by this court, but they have not in a single instance cited the page and volume of the state reports on which these decisions can be found. We cannot consider such citations. The state has gone to the expense of officially publishing the reports of this court and of the Supreme Court, and these reports are conclusive as to what has been decided and can be purchased for the nominal price of $1.50 each. No lawyer has the least excuse for being without these reports, and, if he wishes to practice in this court, when he cites any of its

decisions or any of the decisions of the Supreme Court he must cite the page and volume of the state reports upon which such cases can be found. We have frequently called attention to this matter. We are too much crowded with work to enable us to have time for hunting through other books for what has been decided in Oklahoma. Our own reports are published under our personal supervision and are conveniently at hand, and when proper citations are made we can turn to them without the loss of a minute's time. When laywers want their citations examined, they must conform to this rule.

Second. When this cause was reached for trial, counsel filed what they call a challenge to the panel of petit jurors. This alleged challenge covers nearly five pages of typewritten matter, in which is set out minutely and in great detail their objections to the jury. They allege a great many things which they claim were not done by the jury commissioners, but they do not allege what the jury commissioners did do in selecting said jurors. They also object to certain jurors summoned from certain townships on account of prejudice existing in such townships against appellant. The matters of fact alleged in said motion are not verified by affidavit.

Sections 6794 and 6795, Comp. Laws 1909, (Rev. Laws, 5841, 5842), are as follows:

"Section 6794. Challenge to Panel.—A challenge to the panel is an objection made to all the trial jurors returned, and may be taken by either party.

"Section 6795. Cause for Challenge.—A challenge to the panel can be founded only on a material departure from the forms prescribed by law, in respect to the drawing and return of the jury, or on the intentional omission of the sheriff to summon one or more of the jurors drawn, from which the defendant has suffered material prejudice."

This court has always held that a substantial compliance with the law directing the manner in which jurors shall be selected and summoned is all that is required. When this is done the law is satisfied. If any jurors selected on a panel are prejudiced, this matter cannot be inquired into on a challenge

to the panel unless there was unfairness or prejudice in the selection or summoning of said jurors. Otherwise the prejudice of jurors can be reached by a motion for a change of venue or by a challenge to individual jurors when examined upon their *voir dire*. We think the trial court did not err in overruling the challenge to the panel.

Third. In their brief counsel for appellant say:

"The trial court erred in sustaining the objection of the state to the introduction of testimony offered by the plaintiff relative to the testimony of a witness who tesified at the examining trial and died before the trial in the district court."

The record touching this matter shows that H. R. Reubelt was placed upon the stand as a witness for appellant. He testified that he attended the examining trial of appellant at Checotah; that he heard one Cal Backbone testify. It was admitted by the state that the witness Backbone had died before the final trial of appellant. The witness was then handed a typewritten statement and was asked if he recognized that as the testimony of said witness Backbone at the examining trial of this cause. He replied: "It appears to be; that he may have testified to some things in the statement and he may not have testified to others." The witness testified as remembering that the witness Backbone was sworn and testified in behalf of appellant at the preliminary trial and was cross-examined by the county attorney. He was of the opinion that the paper offered in evidence was a copy of the testimony of said witness Backbone, but was not absolutely certain of it.

J. B. Lucas, a witness produced by appellant, testified that he was present when the testimony of Cal Backbone was taken down by the stenographer; that the stenographer had given him this paper as the testimony of the witness Backbone; that he has had this paper in his possession ever since; that the stenographer prepared three copies of this evidence; and that the copy offered in court is the copy handed witness by said stenographer.

C. H. Tully testified that he was present at the examining

trial and heard the testimony of Cal Backbone, but he could not to save his life say that the paper offered in court was the testimony of Cal Backbone. The court then ruled that the paper offered in evidence would not be admissible unless the stenographer who made it was present and testified to transcribing it from his notes; that, if the stenographer who made it identified it as being a true and correct copy of his notes, it would be admissible. The court excluded the written instrument offered as the testimony of the witness Backbone, to which appellant reserved an exception.

Where the testimony of a witness on an examining trial is taken down and signed by him, or is taken in shorthand and transcribed without signing, and is filed with the clerk of the district court by the examining magistrate, such written statement upon proof of the death of such witness may be used as a deposition, without further identification or verification.

Sec. 6623, Comp. Laws 1909, (Rev. Laws, sec. 5674), is as follows:

"Preliminary Examinations.—First, The witnesses must be examined in the presence of the defendant, and may be cross-examined by him. On the request of the county attorney, or of the defendant, all the testimony must be reduced to writing in the form of questions and answers and signed by the witnesses, or the same may be taken in shorthand and transcribed without signing, and in both cases filed with the clerk of the district court, by the examining magistrate, and may be used as provided in section 6676 of this act. In no case shall the county be liable for the expense in reducing such testimony to writing, unless ordered by the county attorney."

Sec. 6676, Comp. Laws 1909, (Rev. Laws, sec. 5719). is as follows:

"In the investigation of a charge for the purpose of presenting an indictment or accusation, the grand jury may receive the written testimony of the witnesses taken in a preliminary examination of the same charge, and also the sworn testimony prepared by the county attorney, without bringing those witnesses before them, and may hear evidence given by witnesses produced and sworn before them, and may also receive legal documentary evidence."

The paper purporting to be the evidence of the witness Backbone given at the examining trial, not being in compliance with section 6623, above quoted, could not have been received as a deposition and used for any purpose as evidence unless the stenographer who took the testimony of said witness at said trial in open court and under oath identified it as being a true and correct copy transcribed from his notes.

The court therefore did not err in excluding the testimony offered.

As to whether or not appellant might have proven, had he attempted to do so, what the testimony of said witness Backbone was at the preliminary trial, the said witness having died, by persons who were present and heard his testimony and could swear to the substance of it from memory, is not presented for decision, for no such offer was made in the trial court. Many authorities hold that this can be done. We do not now know of any reason why, upon a proper showing, it should not be permitted; but, as this question has not been discussed or brought before us, we will not attempt to decide it at the present time.

Fourth. The court, among other things, instructed the jury as follows:

"The defendant does not deny the killing of the deceased, as heretofore stated, at the time and in the manner charged in the information, but claims that if he did so then he was acting in self-defense, which in law means the right to protect one's person against an attack, injury, or danger produced by another. The right to defend one's self against any danger or attack not of his own seeking is an inherent right, and which the law not only concedes, but guarantees to all men. But the law does not permit a man to voluntarily seek or invite a combat. The right of self-defense does not imply the right of attack, and it will not avail in any case where the difficulty is sought for and induced by the defendant, by any willful act of his own, and where the accused voluntarily and of his own free will entered into it, no matter how imminent his peril may become during the progress of the difficulty. Nor is any one justified in using any more force than is necessary, as it may appear to him at the time."

To this instruction appellant reserved an exception. In objecting to this instruction counsel for appellant in their brief say:

"This instruction, boiled down, as we see it, deprives the defendant of the defense of excusable homicide; that is, if he voluntarily entered into the difficulty, no difference how suddenly it arose, nor how imminent his peril may have become during the progress of the difficulty, he could not avail himself of the right of self-defense. This it seems to us violates one of the most elementary rules of the law of homicide."

If appellant had been convicted of murder, the instruction given might have constituted reversible error, because it does not clearly draw the distinction between mutual combats and difficulties voluntarily sought, invited, and entered into by a defendant merely for the purpose of having a personal difficulty and without any intention of killing or inflicting serious bodily injury upon his antagonist, in which event the killing would only constitute manslaughter, or when such difficulty was entered into where the defendant knew or had reason to believe it might result in death or serious bodily injury to himself or to his antagonist, or where the defendant entered into the same with the intention of killing his antagonist, in which event the killing would constitute murder. The same principle of law largely controls the doctrine of mutual combat which controls in cases of provoking a difficulty.

In the case of *Koozer v. State,* 7 Okla. Cr. 336, 123 Pac. 554, this court said:

"To prevent misapprehension from the first paragraph in this instruction, we desire to state that, although a defendant may not have any intention of provoking a difficulty with the deceased, yet if the jury should be satisfied beyond a reasonable doubt, from the language or conduct of the defendant, or from all of the facts and circumstances in evidence, that the defendant and the deceased voluntarily—that is, willfully and without real or apparent necessity—engaged in a mutual combat knowing, or having reason to believe, that it would or might result in death or serious bodily injury to either of such parties, and death ensued from such conflict, then the survivor could not plead self-defense and would be guilty of murder; but if such

a combat took place, and the defendant did not know or have
reason to believe that it would or might result in death or seri-
ous bodily injury to either or both of such parties, and if the
defendant without intending to kill or inflict serious bodily in-
jury upon the deceased struck the fatal blow, then the defend-
ant would be guilty of manslaughter, and in either case it
would be immaterial as to who struck the first blow or made the
first attack. It is the law that no man can take human life
upon a necessity which he wrongfully and willfully assisted to
create. * * * The greatest defect in this instruction is that
it should have gone further and told the jury that, if they found
from the evidence beyond a reasonable doubt that the appellant
used such insulting language to the deceased for the purpose
of provoking him into a difficulty and furnishing the appellant
a pretext for killing or doing him serious bodily injury, and
that thereby a combat ensued in which the appellant killed the
deceased, then the appellant would be guilty of murder; but,
if appellant used such language toward the deceased for the
purpose of bringing on a difficulty without any intention on
the part of appellant to kill the deceased or do him serious
bodily injury, then the appellant would be guilty of man-
slaughter. * * * We desire to emphasize the fact that, in
all trials for murder in which the doctrine of provoking the
combat arises, the court should always clearly instruct the jury
that, if they are satisfied from the evidence beyond a reason-
able doubt that the defendant sought, provoked, or occasioned
the difficulty with the deceased for the purpose of killing him
or inflicting serious bodily injury upon him, then in all such
cases such defendant is guilty of murder if he kills the deceased
in such combat, it matters not how hard pressed he might have
been himself therein, unless before the fatal blow was struck,
or shot was fired, the defendant in good faith seeks to abandon
or withdraw from such combat. But where a defendant seeks,
provokes, or occasions a difficulty with the deceased without any
intention of killing or inflicting serious bodily injury upon the
deceased, but merely for the purpose of inflicting personal chas-
tisement upon him, and such combat ensues in which the defend-
ant kills the deceased, then his offense is manslaughter. The
line of demarcation between murder and manslaughter is the
character of the intention with which a defendant provokes a
fatal difficulty, and this intention is to be gathered from the

facts and circumstances in evidence. See *Boutcher v. State,* 4 Okla. Cr. 576, 111 Pac. 1006."

In cases in which a defendant voluntarily engaged in a mutual combat in which he kills his adversary, the line of demarcation between murder and manslaughter depends upon the character of the intention with which the defendant entered into such conflict as hereinbefore explained. It therefore might be possible that under this instruction a defendant might be convicted of murder when under the evidence he should not be convicted of more than manslaughter. But this objection does not arise in the present case because the appellant was convicted of manslaughter.

Section 2288, Comp. Laws 1909, (Rev. Laws, sec. 2332), defines "excusable homicide" as follows:

"Homicide is excusable in the following cases: (1) When committed by accident and misfortune, in lawfully correcting a child or servant, or in doing any other lawful act, by lawful means, with usual and ordinary caution, and without any unlawful intent. (2) When committed by accident and misfortune in the heat of passion, upon any sudden and sufficient provocation, or upon a sudden combat provided that no undue advantage is taken, nor any dangerous weapon used, and that the killing is not done in a cruel or unusual manner."

This law cannot be invoked by appellant because he killed the deceased by shooting him with a double-barrel shotgun, which was a dangerous weapon.

Sections 2269 and 2270, Comp. Laws 1909, (Rev. Laws, secs. 2314, 2315), are as follows:

"Sec. 2269. Design to Effect Death Inferred.—A design to effect death is inferred from the fact of killing, unless the circumstances raise a reasonable doubt whether such design existed.

"Sec. 2270. Premeditation.—A design to effect death sufficient to constitute murder, may be formed instantly before committing the act by which it is carried into execution."

It would indeed be a monstrous doctrine, pregnant with danger to human life and utterly destructive of the peace and good order of society, for this court to hold that, because appellant killed the deceased in a sudden difficulty, he should

be acquitted upon the ground of execusable homicide. This would be but to license desperate men to go around armed with deadly weapons and shoot down their fellow men upon the slightest provocation and escape punishment, provided only the shooting was done upon a sudden difficulty. This would be the rule of anarchy, not of law. It is good law and good morals that if men unnecessarily and intentionally kill each other, it is none the less murder, because such intention may be formed instantly before the commission of the act. It is the intention which prompts the act, and not the length of its duration, which makes the act of killing murder in such cases. It is also good law and good morals that men are presumed to intend the natural and reasonable consequences of their acts, and that an intention to kill arises from the act of killing, unless the circumstances raise a reasonable doubt whether such design in fact existed.

We therefore cannot agree with counsel for appellant, upon the objection which they present, that the instruction complained of violates the most elementary rules of the law of homicide. On the contrary, we think that, if the doctrine for which they contend be conceded, it would place a premium upon the most cowardly and cold-blooded kind of assassination, namely, shooting a man down in a sudden difficulty without giving him an opportunity to prepare to defend himself, or to even say, "God have mercy on my soul." This doctrine would make butchers of men and a human slaughterhouse of the state of Oklahoma. It would paint our state red with innocent blood and fill it with the cry of widowhood and the wail of orphanage. Next to honor, human life is the most precious thing this side of heaven. No man with unhallowed hands can be permitted to intentionally break into the sacred house of life and shed its priceless stream and then come clear on the ground that he acted only on a sudden impulse or difficulty. We feel that we cannot too strongly condemn this idea. The intentional taking of human life can only be justified by the mandate of the law, or upon the ground of necessity. This necessity must

not be caused by the intentional fault or wrongdoing of him who attempts to plead it. This is the philosophy of the law of self-defense pressed into a nut-shell. We know that the law of self-defense is often abused. This is true of every defense provided for by law. Perfection is not an attribute of human nature. Perfect laws cannot be made by imperfect men. Perfect men do not make the laws, and perfect courts and juries do not construe and enforce them. Under the very best system possible, individual instances in which there will be a miscarriage of justice will arise; but we believe that, if we recognize the doctrine now contended for by counsel for appellant, it would result in a wholesale miscarriage of justice in Oklahoma.

We therefore hold that, as applied to the evidence in this case, the instruction given does not constitute reversible error.

Fifth. It is not claimed by counsel for appellant in their brief that the verdict is contrary to the evidence. It is therefore not necessary to recite and discuss the testimony in detail, further than to say that from the testimony of the state we think that the evidence clearly sustains the verdict and that appellant should congratulate himself upon the fact that he escaped a conviction for murder.

We find no material error in the record.

The judgment of the lower court is therefore in all things affirmed.

ARMSTRONG, P. J., and DOYLE, J., concur.