## R. M. EDWARDS v. STATE.

No. A-7932.   Opinion Filed June 19, 1931.

(1 Pac. [2d] 175.)

Guy L. Andrews, Jess Pullen and Wilkinson & Hudson, for plaintiff in error.

J. Berry King, Atty. Gen., and Ed. Crossland, Asst. Atty. Gen. (John C. Powell, of counsel), for the State.

CHAPPELL, J.   Plaintiff in error, hereinafter called defendant, was convicted in the district court of Murray county of the crime of perjury, and his punishment fixed by the jury at imprisonment in the state penitentiary for five years.

It appears from the record:

That a certain will executed by Samuel Fried, deceased, dated April 28, 1906, had been admitted to pro-

bate in the county court of Murray county, and that thereafter, on the 20th day of June, 1929, there came on for hearing before said court a contest of the probate of said will, and there was offered in lieu thereof a will purporting to have been executed by Samuel Fried on the 18th day of August, 1917. That during the trial of said cause the defendant testified, in substance, that, after he had received several communications concerning a purported later will, he made a trip to Arkansas, and in the home of one Miller, a justice of the peace, he there found concealed in a pigeonhole in an old cupboard the said will dated August 18, 1917. That he believed said will to be the last will and testament of the said Samuel Fried, and that the same had been executed as was purported by such instrument.

That thereafter the state filed an information against the defendant charging him with perjury, and alleged that then and there certain questions became material in said cause, naming them; and further alleged:

"That then and there, being a witness as aforesaid, the said R. M. Edwards did knowingly, willfully, corruptly, feloniously and falsely testify, depose and say, in substance and effect, that he, the said R. M. Edwards, on or about the first day of April, 1929, visited the home of one Miller, a justice of the peace of Board Camp, Arkansas, where he discovered among some old records a will signed by Samuel Fried of date August 18, 1917, and witnessed by M. D. Huddleston and one L. P. Purvis; that he discovered said will in a pigeonhole, partitioned off in an old cabinet in the home of said justice of the peace Miller; that prior to going to the home of said justice of the peace Miller that he, R. M. Edwards, went to the home of a Baptist Church deacon by the name of Parker to inquire of him who had certain old church records and papers kept by one L. P. Purvis, former justice of the peace, and that said Parker directed him to the home of said Miller,

and one Dean Keys, then justice of the peace, and that he proceeded directly from the home of said Parker to the home of justice of the peace Miller; that after he discovered the will of date August 18, 1917, that he took said will away with him, and did not know what he had, and on the way from said Miller's home met and picked up one Jonas Ellison, the first person to whom he showed said will after finding it at Miller's and that he, said R. M. Edwards, had no knowledge whether Lewis Purvis wrote the August 18, 1917, will, or who wrote it, but reached the conclusion that Mr. Purvis did sign it as a witness; which said false testimony is more fully shown by the questions then and there asked said R. M. Edwards when so testifying as said witness."

Thereupon the state set out the questions propounded to defendant and his answers thereto, and followed the same with the further declarations:

"In all of which particulars the testimony, statements and declarations so testified and deposed unto by the said R. M. Edwards were then and there material matter in and to a determination of which was the last, true and genuine will of Samuel Fried in said Probate Case No. 977, in the Matter of the Estate of Samuel Fried, deceased, then being heard as aforesaid, and which testimony, statements and declarations aforesaid, were then and there false, as specifically pointed out hereinabove, and were then and there by said R. M. Edwards willfully, knowingly, corruptly, falsely and feloniously made, and were by him not believed to be true and known by him to be false, contrary to the form of the statutes in such cases made and provided, and against the peace and dignity of the state."

In support of such charge the state called Mabel Fulton, who was the county court reporter and deputy court clerk, who identified the court records and the purported will of August 18, 1917, and testified that as such court stenographer she took in shorthand the testimony

of the defendant in cause No. 977, on the 20th day of June, 1929, and that as such court reporter she transcribed the testimony of the defendant, who testified at that trial; that she had independent recollection of his testimony; that she could not give the testimony without reference to the notes which were taken at the time the testimony was given; and thereupon the witness was permitted to read from the testimony given by defendant upon which the perjury charge is predicated in this case, which evidence is substantially as set out in the statement of facts in this opinion and as alleged in the information, and thereupon the state introduced the transcript of such testimony in evidence.

Defendant contends first that the court erred in overruling his demurrer to the information, for the reason: (1) That the facts set forth in said information do not constitute a public offense against the laws of the state of Oklahoma; (2) that, if the facts set forth in said information had been accepted by the court as true, and the will about which testimony was offered had been probated, the order probating same would have been of no legal force or effect as to any of the property mentioned in said will, and would have created no rights in favor of any person offering the same for probate, and that the testimony offered and complained of in said information was irrelevant and immaterial, and, if same had been true, would have been of no force or effect under the laws of the state of Oklahoma.

Under defendant's first division of this assignment, he argues that the information is fatally defective, for the reason that there is no allegation in said information that in truth and in fact the said R. M. Edwards did not find the will at the place where he testified that he found it.

It is sufficient answer to this argument to say that the information complies with the requirements of sections 1628 and 2570, C. O. S. 1921.

In Martin v. State, 35 Okla. Cr. 248, 250 Pac. 552, this court said:

"An information which informs an accused of the offense with which he is charged with such particularity as to enable him to prepare for his trial, and so defines and identifies the offense that, if convicted or acquitted, he will be able to defend himself against any subsequent prosecution for the same offense, is sufficient."

It was not necessary to set forth facts showing that the purported testimony was material; an averment of the materiality thereof is sufficient. Cutler v. Territory, 8 Okla. 101, 56 Pac. 861; Miller v. State, 9 Okla. Cr. 196, 131 Pac. 181.

While the information is complex and contains considerable repetition and is unduly long, it sets forth all of the material facts necessary to inform the defendant of the charge against him, which he must defend against, and to protect him from future prosecution in case of conviction thereunder.

Defendant under this assignment next contends that he could not be guilty of perjury, for the reason that the purported will itself was void under our statute, as attempting to deprive the wife of her just share of the estate, and that, since the will was invalid as a matter of law, therefore the defendant could not be guilty of perjury.

At the time defendant testified in the county court in the hearing for probate of the alleged will of 1917 of Samuel Fried, the sole question was the factum of the will, or the question of devisavit vel non.

In Nesbit v. Gragg et al., 36 Okla. 703, 129 Pac. 705, that court said:

"In a proceeding to probate a will under the provisions of Mansf. Dig. Ark. 1884, § 6521 (Ind. T. Ann. Stat. 1899, § 3593), the only issue triable is the factum of the will or the question of devisavit vel non.

"In such proceeding the court lacks jurisdiction to construe the will or determine the rights of the parties or the validity of any devise therein."

In Brock v. Kiefer, 59 Okla. 5, 157 Pac. 88, 89, that court said:

"In a proceeding to probate a will, the court cannot construe or interpret the will or distinguish between valid and void disposition. If the will be legally executed and proved, and not successfully attacked for want of testamentary capacity, undue influence, fraud, or duress, it must be admitted to probate."

See, also, Letts v. Letts, 73 Okla. 313, 176 Pac. 234; Courtney et al. v. Daniel, 124 Okla. 46, 253 Pac. 990.

In Cox v. Cox, 101 Mo. 172, 13 S. W. 1055, 1056, that court said:

"It is not part of the proceeding on probate to construe or interpret the will or any of its provisions, or to distinguish between valid and void, rational and impossible, dispositions. If the will be properly executed and proved, it must be admitted to probate, although it contain not a single provision capable of execution, or valid under the law."

Even if the will had been void under the laws of Oklahoma, as contended for by defendant, he would be guilty of perjury for giving false testimony in regard to the same.

Defendant next contends that the court erred in permitting the witness, Mabel Fulton, to read from the tran-

script of the evidence of defendant given at the trial of the probate of the August 18, 1917, will of Samuel Fried, in the county court of Murray county, Okla., over the objection of the plaintiff in error.

Mabel Fulton was the official court reporter in a court of record, and in the case at bar her name was indorsed on the information as a witness, and she was duly sworn to testify truly; she testified that the defendant was sworn and testified, and did further testify by reading from defendant's testimony as she took it down at the probate hearing, and that she had made a true and correct transcript of such testimony. Her notes were introduced in evidence and the defendant given an opportunity to examine them.

In the case of Harmon v. Territory of Okla., 15 Okla. 147, 79 Pac. 765, that court said:

"Where the stenographer's shorthand notes of testimony have been by him transcribed in longhand, and at the time of so doing he makes duplicate carbon copies of the same, such duplicate carbon copies are not copies in the sense in which the word 'copy' is ordinarily used; and the use of such a carbon copy by a stenographer testifying, from which to refresh his memory, is not error."

In Davis v. State, 15 Okla. Cr. 386, 177 Pac. 621, this court said:

"The law does not designate who at an examining trial may take 'in shorthand' the evidence of a witness, and any stenographer may do so, and a transcript of such evidence, without being signed by the witness, upon a proper predicate being laid therefor, may be legally admitted in evidence."

In Cutler v. Territory of Oklahoma, 8 Okla. 101, 56 Pac. 861, that court said:

"The rule of evidence requiring that the best evidence shall be produced, to the exclusion of secondary and hearsay, is not violated by permitting the official court stenographer to read from his notes the testimony of a witness in a former trial, taken and recorded by him at the time, and sworn to by him to be correct, even though he testifies that he has no independent recollection of such testimony, and cannot refresh his memory from such notes."

It was not error, therefore, for the trial court to permit the stenographer to testify from her notes and to permit the state to introduce the duly authenticated transcript of the same.

Defendant next complains of the instructions of the court, but, when considered together, they fairly state the law as applicable to the facts in the case, and are as favorable to the defendant as the evidence and the law require.

Defendant complains of other errors, but we do not deem them of sufficient importance to require a discussion in this opinion.

The evidence is sufficient to establish that defendant either forged, or procured to be forged, the will in question; that his testimony as to where and how he found it was false, and that he knew his evidence to be false at the time he gave it; that he was not only a party to the making of the false will, but that he sought to establish it by false and perjured testimony.

The guilt of defendant being established by the overwhelming evidence in the case, and the errors of law complained of being without substantial merit, the cause is affirmed.

DAVENPORT, P. J., and EDWARDS, J., concur.