Henry HARRIS, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A-13476.

Court of Criminal Appeals of Oklahoma.

March 10, 1965.

Willard M. Gotcher, George L. Hill, Mc-Alester, for plaintiff in error.

Charles Nesbitt, Atty. Gen., Charles L. Owens, Asst. Atty. Gen., for defendant in error.

BUSSEY, Presiding Judge.

Henry Harris, hereinafter referred to as the defendant, was charged by information in the District Court of Pittsburg County with the crime of Murder. His co-defendants having requested and received a severance, he was tried by jury who found him guilty of the included offense of Manslaughter in the First Degree and assessed his punishment at 8 years imprisonment in the State Penitentiary at McAlester, Oklahoma. Judgment and sentence was pronounced in accordance with the verdict of the jury, and from said judgment and sentence, he appeals.

Testimony offered on behalf of the State at the trial was substantially as follows:

Emmitt Edward Tanner testified that about noon he went to the J-Bar in McAlester, Oklahoma, and that he visited and drank beer with Alvin Turnbow, Alvie William Stacey and Elbert Robert Stacey. That they had been seated together in a booth when he left to go to the rest room, and upon returning from the rest room he observed Alvin Turnbow, whose head was bleeding, and a man near him with a gun, and that he saw Alvin Turnbow go for his gun. At this point the witness hid behind a partition where he could not see what

happened, but that he heard a series of shots fired. He stated it was quiet then and the police were summoned.

Alvie William Stacey testified that on the 26th day of March, 1962, he and his brother, Elbert Robert Stacey, were seated in the J-Bar with Alvin Turnbow when the Harris boys and Floyd Watkins came up behind Turnbow in the booth. That one of the Harris boys struck Turnbow on the head with some object, while Watkins placed a knife at Turnbow's throat. He stated that at this time Henry Harris had a gun in his hand and that Turnbow was putting out a cigarette. The witness and his brother jumped out of the booth, stepped over the shuffle board and ran for the door. He testified that he did not see what transpired thereafter.

Elbert Robert Stacey testified that he and his brother were seated in the J-Bar when the two Harris boys and one Watkins came up behind Turnbow in the booth. That they started beating on Turnbow and that as he left the booth he observed Henry Harris with a gun in his hand. That as he ran for the door he saw the deceased Turnbow, attempting to inject a shell into a gun after he had been beaten. The witness testified that he heard shots fired, saw Henry Harris slump but that he could not tell whether or not Turnbow had been hit.

Officer E. J. Sutterfield testified that on the afternoon of the 26th day of March, 1962, in response to a call, he went to the J-Bar where he found Turnbow wounded but still breathing. The witness testified that he measured the room, that he found a .25 caliber cartridge underneath the booth where Turnbow had been sitting and a .45 caliber shell, a .25 caliber hull and a .25 caliber slug. He marked these for identification and turned them over to the Chief of Police, Elmer Durant.

Officer Bob Oliver testified that on the 26th day of March, 1962, he went to the premises of the J-Bar and while there, with other officers, conducted a search of the premises. He identified State's Exhibits 1 through 9, the same consisting of a .45

caliber automatic, a small caliber automatic and holster, and a number of spent cartridges and slugs from the .45 caliber automatic and spent cartridges and slugs from a smaller caliber weapon. These exhibits were admitted in evidence without objection being interposed by the defendant. The witness testified that a number of the shells had ricocheted off the wall and were found on the floor in the bar.

Elmer Durant testified that on the date in question, while acting as Chief of Police, he proceeded to the J-Bar and upon arriving there was informed that the persons involved in the altercation had been removed to the Municipal Hospital. Durant then proceeded to the hospital where he, together with one Dr. Floyd T. Bartheld, examined the body of Alvin Turnbow. He described abrasions and bruises on the body of the deceased, a point of entry wound in the chest and identified a .45 caliber slug which was removed from the back of the deceased. This witness testified that Watkins, K. C. Harris and Henry Harris had all been wounded. Watkins had apparently been shot in the hand, K. C. Harris had been struck by one bullet and Henry Harris had been wounded twice. This witness identified a .45 caliber automatic and a .25 caliber automatic which had been previously introduced in evidence.

Dr. Floyd T. Bartheld, Pittsburg County Medical Examiner, testified that he examined the body of Alvin Turnbow in the McAlester Municipal Hospital and subsequently with Dr. Greenberger performed an autopsy upon the deceased. This witness testified to lacerations and bruises on the head and ear of the deceased apparently inflicted by a blunt object yielded with considerable force, but stated that the cause of death was produced by a gunshot wound in the chest of the victim, which in his opinion, produced immediate death. He testified that after this injury had been received by the deceased, the deceased would not have been able to fire a gun.

At this point in the trial the State called Deputy Sheriff Eugene B. Thompson and Mrs. Ida Roberts, secretary to the County Attorney, and after hearing the testimony of these two witnesses the trial court admitted into evidence the testimony of Eugene Fite, Ruth Dooley and Mary Elizabeth Shropshire taken at a preliminary hearing on the 9th day of May, 1962 before Judge E. W. Thomas, at which preliminary hearing the defendant, Henry Harris, was jointly charged with his co-defendants, K. C. Harris and Floyd Watkins, who after having been bound over to the District Court requested and were granted a severance. To such ruling of the court defendant excepted, which exception forms the basis of his assignment of error #4 urged on appeal.

It is urged that the trial court erred in admitting said testimony. In his brief on appeal the defendant urges that the transcript of testimony taken at preliminary hearing was not taken by a qualified court reporter and is therefore inadmissible.

The testimony of Mrs. Ida Roberts was that she had been employed as a legal stenographer for the firm of William Jones, Attorney at Law for a period of thirteen years prior to becoming the County Attorney's stenographer. She further testified that she had worked for the County Attorney's office for three years and had on several occasions transcribed the testimony taken at preliminary hearings before justices of the peace from her shorthand notes and from a tape recording of such proceedings. She further testified that on the 9th day of May, 1962, she transcribed by shorthand and tape recording the testimony offered at said preliminary and that from her shorthand notes and tape recording so taken, she prepared a typewritten transcript of the same by comparing the shorthand notes with the tape recording of said proceeding, and had prepared three copies of said transcript which she had duly indexed and certified, one copy of which was kept by the County Attorney's office, while another of the copies had been delivered a few days after its preparation to Mr. Willard Gotcher, one of defendant's attorneys.

It does not appear that counsel for defendant ever questioned the accuracy of Mrs. Roberts' transcript of the preliminary hearing, but to the contrary, had used the same in earlier cross examination of witnesses during the trial, nor does he cite any authorities in support of this contention. In the early case of Davis v. State, 15 Okl.Cr. 386, 177 P. 621, in Syllabus #3 this court held:

"* * * that the law does not designate who at an examining trial may take 'in shorthand' the evidence of a witness, and any stenographer may do so, and a transcript of such evidence, without being signed by the witness, upon a proper predicate being laid therefor, may be legally admitted in evidence; * * *."

This statement was cited with approval in Edwards v. State, 51 Okl.Cr. 221, 1 P.2d 175.

It is further asserted by the defendant that since the transcript was not filed with the court clerk as required by law, the testimony of Eugene Fite, Ruth Dooley and Mary Elizabeth Shropshire contained therein was not admissible. No authority is cited by the defendant in support of this contention. In the third paragraph of the syllabus in the case of Exleton v. State, 30 Okl.Cr. 224, 235 P. 627, the following language is used:

"It is not an essential prerequisite that a transcript of the evidence taken at a preliminary trial be filed with the court clerk in order to render it admissible in evidence, when otherwise competent and material."

In the case of Wadsworth v. State, 9 Okl. Cr. 84, 130 P. 808 this court ruled that the trial court did not err in refusing to admit purported copy of testimony of a witness at a preliminary examination when the same had not been filed with the Clerk of the District Court nor identified by the stenographer who transcribed the same, however the court stated:

"* * * Where a witness has testified at an examining trial and has been cross-examined by the opposing party, and his testimony is taken down by a stenographer, but the provisions of section 6623, Comp.Laws 1909, have not been complied with, a purported copy of said testimony is not admissible in evidence unless the stenographer who took down the testimony of said witness testifies that such purported copy of the evidence is a true and correct copy of his notes of the testimony of such witness."

In the instant case the transcript of testimony taken at preliminary examination, although not filed with the clerk, was properly identified before the trial court and certified by the stenographer who transcribed the same and meets the requirements set forth in Wadsworth v. State, supra.

The defendant's contention that the court improperly admitted such transcript because the state had not shown sufficient diligence in attempting to locate witnesses prior to trial is likewise without merit since it affirmatively appears from the testimony of Deputy Sheriff Eugene B. Thompson that after receiving subpoenas for the three witnesses on October 9th, 1963, he visited the last known addresses, found them to be vacant and empty and ascertained from neighbors that they had moved somewhere in Texas. He checked with the Police Department in an attempt to ascertain their present addresses, but was unable to do so. Again prior to the commencement of the trial, October 21, 1963, Deputy Sheriff Eugene B. Thompson and Mrs. Ida Roberts returned to the last known addresses of the witnesses and were only able to ascertain that said witnesses had moved somewhere in Texas. We believe that due diligence was shown and that the state properly laid the predicate for the introduction of testimony of the absent witnesses, Eugene Fite, Ruth Dooley and Mary Elizabeth Shropshire. It, therefore, follows that the trial

court did not err in admitting into evidence the testimony of these three witnesses.

Testimony of Eugene Fite taken at preliminary hearing on the 9th day of May, 1962 introduced on the trial was substantially that he was in the J-Bar on the date in question, and that Alvin Turnbow was seated in a booth with Alvie William Stacey and Elbert Robert Stacey when K. C. Harris opened the door and looked in toward the booth in which Turnbow was seated, and that Harris ran back across the street and re-entered the place a few minutes later with Henry Harris and Floyd Watkins. He stated that Henry Harris entered first with a .45 caliber weapon in his hand and that Floyd Watkins and K. C. Harris hurried to the booth where Turnbow was seated. That Watkins pulled Turnbow's arm up over the booth while K. C. Harris struck Alvin Turnbow with a pipe on the head. That after striking Turnbow, the two men at the booth started to leave, one of them asserting "He is done", but they turned and observed Turnbow reaching for a pearl handled .25 caliber pistol and at this point Henry Harris fired the .45 twice. That Turnbow fired his .25 and that a number of shots were fired from both guns.

Ruth Dooley's testimony was in substantial accord with that of Eugene Fite as was the testimony of Mary Elizabeth Shropshire, however, Mary Elizabeth Shropshire had hidden behind the bar and did not observe the shooting. At this point the state rested.

Whereupon, the defendant demurred to the evidence and moved for a directed verdict and the trial court overruled the same. The action of the trial court in overruling the demurrer forms a basis for the first assignment of error presented on appeal. It suffices to say in the light of the testimony adduced by the state that the trial court did not err in overruling the demurrer.

As the first witness, Floyd Ray Watkins, a relative of the accused, orginally charged as a co-defendant was called by the defense. His testimony of what occurred at the J-Bar can best be summarized in his own words.

"A. We left the garage * * * and started into the J-Bar. Just as we got through the door there about three or four steps I looked over to my right hand side and I saw Turnbo setting there in the booth with some more men. He raised up just like this and pulled a pistol out of his pocket. It was still in the holster and I told these boys 'Watch out there is Turnbo and he has got a gun.' He had it under the booth here pulling it out of this holster. And I ran over there and grabbed at the gun and was trying to get him to drop it. I told him to drop it—well we was all—Henry told him to drop it. He said 'No, I ain't going to drop it.' And I put my knife right here on his throat and I said 'Drop it.' K. C. was hitting at him. And he said 'I dropped my gun.'

"Q. Who said that?

"A. He did.

"Q. Turnbo?

"A. Yes sir. He said 'I dropped my gun.' and when he said that we turned and started to leave and when we got just about to the door and I heard Turnbo say 'No I haven't dropped my gun either.' I turned around and just about the time I turned around I seen Henry turn around, and just as Henry turned around Turnbo shot him and Henry fell to the floor. He just fell and got right back up. Just as he got up on his feet good again Turnbo shot him again and he fell to the floor again. I went over this little bowling machine deal toward him to try to get the gun again and when I did he shot me. I fell into the booth right in front of him. Then I heard another gun shot and I seen K. C. Grab his hand like this. And then I seen Henry was pulling back up on the little bowling machine. and he said—Henry said 'Drop your gun.' Turnbo whirled around like

that and started to shoot him right between the eyes and Henry just shot."

The witness further testified that on the previous Saturday night before the slaying on Monday, Turnbow had pistol whipped the witness and shot at him, and that when the defendant Harris had attempted to intercede, Turnbow threatened to kill him and shot at him. The witness stated that they did not know that Turnbow was in the J-Bar, and that they had only gone there for a beer, that they did not intend to kill Turnbow but only meant to disarm him and that they had all acted in self defense.

Thereafter, the defense introduced the testimony of Eugene Fite, Ruth Dooley and Mary Elizabeth Shropshire which had been transcribed by the court reporter on the trial of Floyd Ray Watkins on the 17th day of June, 1963. This testimony was offered for the purpose of impeaching the testimony taken at the preliminary hearing before the Honorable E. W. Thomas on the 9th day of May, 1962 and introduced by the state as a part of its case in chief. The testimony of these three witnesses was not in sharp conflict with the testimony previously given at the preliminary examination, but they were unable to recall many of the events and circumstances concerning the slaying about which they had previously testified. This is not surprising in view of the fact that some thirteen months had elapsed since the witnesses had testified at the preliminary.

■ Thereafter, the defense called numerous witnesses who testified to threats of violence toward the defendant and others, and to specific acts of violence communicated and uncommunicated and to the reputation of the deceased as being a dangerous and violent man. Great latitude was given the defense in the introduction of this testimony which was in keeping with the rules enunciated in Mulkey v. State, 5 Okl. Cr. 75, 113 P. 532; Roberson v. State, 91 Okl.Cr. 217, 218 P.2d 414; Jenkins v. State, 80 Okl.Cr. 328, 161 P.2d 90, 162 P.2d 336 and Fields v. State, 85 Okl.Cr. 439, 188 P.2d 231. Under these authorities above cited

it is generally held that in a homicide prosecution, where the plea is self-defense and there is some evidence other than threats tending to support the plea, proof of threats made by the deceased, communicated or uncommunicated to the defendant, is admissible, and likewise where a defendant has laid a proper foundation of self-defense, he may introduce evidence of the turbulent and dangerous character or reputation of deceased, and moreover, when there is some other evidence of self-defense, a defendant may introduce evidence of specific acts of violence on the part of deceased against persons other than the defendant, when these are known to defendant prior to the homicide.

■ Such evidence was admitted by the court for the purpose of showing what the deceased probably did, and not what the defendant probably thought the deceased was going to do. The inquiry being one of objective occurrence, not of subjective belief. Wigmore on Evidence, 3rd Ed., par. 63, Mulkey v. State, supra.

■ The trial court refused to admit testimony of some of the witnesses and this forms the basis for assignments of error #5 and #6. The testimony excluded by the court was merely cumulative of evidence already admitted or was not admissible under the authorities cited above. In any event the undisputed evidence was that the deceased had a dangerous, turbulent and violent disposition—had committed acts of violence against the defendant and others and had threatened acts of violence against the defendant and others—and had frequently carried deadly and dangerous weapons. The testimony excluded could have added nothing to the evidence already presented and we fail to see how its exclusion could have prejudiced the defendant.

At the conclusion of this testimony the defendant rested and demurred to the evidence and moved the court for a directed verdict. The trial court overruled the demurrer and refused to direct a verdict for the defendant which rulings formed the

basis for the defendant's assignment of error #2.

■■■■■ Under the facts here presented we are of the opinion that the trial court properly overruled the demurrer and properly refused to direct a verdict for the defendant, for we have repeatedly held that where as in the instant case the testimony is conflicting it is the exclusive province of the jury to weigh the evidence and ferret out the truth and if there is competent evidence to support their findings this Court will not disturb the verdict on appeal.

■■■■ This leads us to a consideration of defendant's last assignment of error which is that the County Attorney committed reversible error when, in his closing remarks, he referred by inference an inuendo to the failure of the defendant to take the stand and testify in his own behalf. We have carefully examined the closing argument of the County Attorney and are of the opinion that the remarks to which the defendant objects were well within the proper scope of closing argument and did not constitute error.

For all of the reasons above set forth, the judgment and sentence appealed from is affirmed.

NIX, and BRETT, JJ., concur.