## BAILEY GAUNCE v. STATE.

No. A-3868.   Opinion Filed Jan. 6, 1923.
(211 Pac. 517.)

(Syllabus.)

1.    Homicide—Justifiable and Excusable Homicide Distinguished. Justifiable and excusable homicide distinguished.

2.    Homicide—Refusal of Instruction on Excusable Homicide not Error Where no Evidence on Issue. Under the circumstances here the court committed no error in failing to instruct the jury defining the elements of excusable homicide.

Appeal from District Court, Carter County; Thos. W. Champion, Judge.

Bailey Gaunce was convicted of manslaughter in the second degree, and he appeals. Affirmed.

Champion & George, for plaintiff in error.

Geo. F. Short, Atty. Gen., and R. E. Wood, Asst. Atty. Gen., for the State.

BESSEY, J.  The plaintiff in error, Bailey Gaunce, herein called the defendant, was by information filed in the district court of Carter county, charged with the murder of Charley Thompson on the 14th day of September, 1919. At the trial, on April 14, 1920, by a verdict of the jury defendant was found guilty of manslaughter in the second degree, and his punishment assessed at confinement in the county jail for a period of three months, and a fine of $500.  From the judgment rendered on this verdict defendant appeals.

At the time of the homicide defendant was about 38 years of age and had resided in the oil fields of Carter county for about 6 years; on the day of the tragedy he was in the town of Wirt, and was sitting in the front seat of a car in which he had been riding, and which was parked on the main street of the town, near the sidewalk.  The deceased, Charley Thompson, lived at Ringling, Okla., and was in Wirt on that day.  The deceased had been drinking during the day, and just prior to the difficulty with the defendant had engaged in a fight with a man known as Toledo Jack, a returned soldier.  Bystanders had separated the deceased and Toledo Jack, and had taken the latter aside, leaving the deceased standing near the car in which defendant was sitting, when the defendant began to remonstrate with the deceased, telling him that he should not have struck the boy. The deceased then replied to the defendant, "Maybe you want to take it up," or words to that effect, as testified to by a number of witnesses, whereupon, according to a number of witnesses for the state, defendant opened the door of the car and sprang at the deceased, striking him in the side of the head with his fist and knocking him prostrate upon the sidewalk, breaking his neck and resulting in almost instant death.  According to several witnesses he continued striking and kicking the deceased after he was down. The defendant then got into the car and drove away.  The

facts as above stated were in some respects corroborated by witnesses for the defendant.

The defendant's account of the final difficulty was as follows:

"A. He then looked at me and said, 'Well, maybe you want some of it.' I said, 'No; I am not looking for anything like that.' 'Well,' he said, 'I will just give you some of it, you d—— s—— of a b——,' and he reached over and unlatched the door and reached for me.

"Q. What door is that? A. The car door.

"Q. What effect did that have on the door? A. The door opened and pulled right back; he had hold of me; he tried to catch me by the collar, and he got me by the lapel of the coat, and I was sitting down, and tried to jerk loose from him. I didn't until I hit the ground, then I knocked him loose. He fought back at me. I guess we were 10 feet from the sidewalk; he kept coming on me, and I saw he was drunk. I didn't want any trouble with him, but he kept coming on me, and kept crowding me back to the sidewalk until I saw I had to do something, and I hit him.

"Q. Why did you hit him? A. I hit him to keep him from hurting me.

"Q. Was he fighting you at the time? A. Yes, sir.

"Q. Did you intend to kill him? A. No, sir. I didn't even intend to fight him if I could get around it, but I couldn't avoid it."

The evidence on both sides, with the possible exception of the testimony of the defendant himself, shows that there was a mutual combat between the deceased and the defendant; that the deceased was in an intoxicated condition, and the defendant was sober; that in that mutual combat the defendant exercised a force beyond that which was necessary to repel the efforts of the enfeebled belligerent to do the defendant bodily harm.

The only assignment of error seriously urged in defendant's brief is that designated at No. 8 in his petition in error, viz., that the verdict of the jury is contrary to both the law and the evidence. Under this assignment of error it is urged that the court should have instructed the jury upon excusable homicide.

There is an important difference between justifiable homicide and excusable homicide, as defined by our Compiled Statutes 1921, secs. 1752, 1753. Justifiable homicide is the taking of human life under circumstances of justification, as a matter of right, such as self-defense, or other causes set out in the statute. Excusable homicide is where death results from a lawful act by lawful means, accomplished accidentally or by misfortune or misadventure, or so accomplished with sufficient provocation, with no undue advantage and without unnecessary cruel treatment. Wadsworth v. State, 9 Okla. Cr. 84, 130 Pac. 808.

The word "misfortune" as here used is analogous to the word "misadventure," as defined in volume 2, Third Revision, Bouvier's Law Dictionary 2221, as follows:

"When applied to homicide, misadventure is the act of a man who, in the performance of a lawful act, without any intention to do harm, and after using proper precaution to prevent danger, unfortunately kills another person."

The constituent elements of excusable homicide are three, viz.: First, absence of an intent to do harm; second, the lawfulness of the act resulting in death; third, proper precaution to avoid mischief. Notes, annotations and citations, 3 L. R. A. (N. S.) 1153. For example, if a workman in a town was on a house and threw off a scantling, and gave due notice of the intent to throw it, and it hit some one and killed him, that would be an accident, and he should go free;

but if a workman in a town should throw a piece of scantling or other heavy substance off a house into a street where people were passing, and it should strike and kill some one, this would be manslaughter.

From the statement of facts it will be seen that in this case there was no issue of excusable homicide. The issue of justifiable homicide was fairly submitted to the jury, without exception or objection or any request for other or further instructions on the part of the defendant. It follows therefore that the assignments of error leveled at the instructions are without merit.

According to the great weight of the testimony the defendant voluntarily entered into an affray in which he had no interest, and assaulted the deceased in a wanton and reckless manner, amounting to manslaughter in the second degree. Excepting the testimony of the defendant himself there was little evidence to support the plea of self-defense. The defendant was the aggressor, and he intentionally struck the deceased viciously and with such violence as to break his neck, and after deceased lay prostrate followed up the assault by striking and kicking him about the head and face.

The judgment of the trial court is affirmed.

DOYLE, P. J., and MATSON, J., concur.