## CHARLES SAUNDERS v. STATE.

No. A-6700. Opinion Filed August 3, 1929.
Rehearing Denied August 24, 1929.
(279 Pac. 908.)

W. R. Withington, for plaintiff in error.

Edwin Dabney, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

CHAPPELL, J. The plaintiff in error, hereinafter called defendant, was convicted in the district court of Canadian county on a charge of stealing chickens in the nighttime, and his punishment fixed at imprisonment in the state penitentiary for a period of 18 months.

This is the second appeal of this case. The first appeal was numbered A-5319, and at the first trial the defendant was sentenced to a term of four years. The cause was reversed for errors occurring at the first trial, and is again before this court on appeal from a second conviction. For statement of facts in the case see Saunders v. State, 33 Okla. Cr. 336, 244 Pac. 55. Two juries having heard the evidence and having found the defendant guilty thereon, and the trial court having twice overruled the motion for a new trial on the ground of insufficiency of the evidence, we are constrained to hold that the evidence

is sufficient to support the verdict of the jury, and the cause must be affirmed, unless the errors complained of by the defendant are sufficient to require the court to reverse the case.

It is first contended that the trial court erred in admitting evidence of the former conviction of this defendant in another chicken stealing case, which was also appealed to this court; the judgment in that case having been reversed on October 16, 1926 (35 Okla. Cr. 203, 249 Pac. 1117). The trial in this case began on October 18, 1926, and for that reason it is contended that, the conviction in the former case having been reversed two days before the commencement of the trial in this case, there was no conviction of record, and proof of the fact that defendant had been convicted by the jury in the former case was erroneous, in that said conviction had been held void by this court. The rule is:

"Where the character or reputation of the accused is not an element of the crime charged, the prosecution cannot put it in issue by offering evidence of his bad character or reputation."

There is, however, an exception to that rule. If the defendant offers evidence as to his good character, then the prosecution may rebut it by evidence of bad character.

The defendant, testifying in his own behalf on direct examination, testified as follows:

"Q. Now, prior to this time, Mr. Saunders, have you ever had any trouble? A. No.

"Q. Beside this affair? A. Outside of this charge they got against me now.

"Q. You got into trouble at Oklahoma City a short time ago, you were arrested for some whisky? A. Little whisky; pint of whisky, is all. That ain't much trouble.

"Q. And that case is pending against you now? A. Yes, sir.

"Mr. Withington: That is the only trouble you ever had. That's all. Cross-examine.

"By Mr. Morrison (county attorney): Q. You say there is a case pending against you in Oklahoma City, liquor charge? A. Liquor charge, yes.

"Q. Oh, I see. Just a pint of whisky or so. A. Yes, pint.

"Q. You state you have been in no other trouble besides this charge here? A. This trouble I am into right now.

"Q. Weren't you convicted for another crime of stealing chickens in the nighttime? A. No, sir.

"Q. You have been convicted on another charge of stealing chickens, in this court, other than this charge, have you not? A. Well, it was all the same time.

"Q. Well, but that was another charge, was it not? other than this charge? A. Yes.

"Q. You were convicted of stealing some chickens from another individual, were you not? A. Yes."

The following authorities support the rule that, when a defendant offers evidence of his good character, the state may rebut the same with evidence of bad character. Pitman v. State, 33 Okla. Cr. 165, 242 Pac. 288; Harris v. State, 39 Okla. Cr. 4, 262 Pac. 700; Morris v. State, 26 Okla. Cr. 399, 244 Pac. 377.

In the case of Alexander v. State, 35 Okla. Cr. 89, 248 Pac. 873, this court in the body of the opinion on page 874 says:

"It is next argued that the state was permitted to prove the reputation of the defendant as a person engaged in the selling of Choctaw beer. The record upon this

point shows that defendant first opened up this line of evidence, over the objection of the state. Having gone into the matter of reputation, it was the right of the state to rebut."

The defendant having taken the stand as a witness in his own behalf, and having put his good character and reputation in issue by testifying that he had not had any other trouble except the case then on trial and a whisky case, it was not error for the court to permit the county attorney in cross-examination to ask the defendant if he had not been in other trouble and had not been convicted in another case of stealing chickens in the nighttime, even though such case had been reversed by this court.

The defendant next contends that the court erred in admitting in evidence the testimony of J. J. Cantley, the manager of the produce company, to the effect that the codefendant, Jim Hulls, who was traveling under the alias of C. H. Woods, told him (Cantley) at the time he sold these stolen chickens to the produce company that his name was C. H. Woods, and that he was operating a produce company at Mustang. This testimony was clearly competent as against Woods in order to show that such a subterfuge was used to induce the produce company to buy the stolen chickens. It was also competent as against this defendant, for the reason that it was made in pursuance of the conspiracy not only to steal the chickens but to sell the same and to divide the proceeds among the participants of the theft, to wit, Hulls, Kennedy, and this defendant.

In the case of Holmes v. State, 6 Okla. Cr. 541, 119 Pac. 430, this court said:

"When a conspiracy is entered into to do any unlawful act, all persons who engage therein are responsible for

all that is done in pursuance of such conspiracy by any of their co-conspirators until the purpose for which such conspiracy was entered into has been fully accomplished.

"The responsibility of co-conspirators is not confined to the accomplishment of the common purpose for which the conspiracy was entered into, but extends to and includes all collateral acts incident to and growing out of the common design.

"Where parties enter into a conspiracy for the purpose of committing a robbery and dividing the proceeds of such robbery among themselves, such conspiracy continues and such parties are responsible for the acts of their co-conspirators incident to or growing out of such conspiracy and done in pursuance thereof, until they have divided the proceeds of such robbery."

The evidence being sufficient to support the verdict of the jury and the errors of law complained of being without merit, the cause is affirmed.

EDWARDS, P. J., and DAVENPORT, J., concur.