**Gerald Franklin BELL, Plaintiff in Error,**

v.

**The STATE of Oklahoma, Defendant in Error.**

**No. A–13186.**

Court of Criminal Appeals of Oklahoma.

Dec. 19, 1962.

Rehearing Denied May 8, 1963.

Jay C. Baker, Chris Rhodes III, Tulsa, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

BRETT, Judge.

This is an appeal by Gerald Franklin Bell, defendant below. Bell was charged by information in the district court of Tulsa County, Oklahoma with the crime of the murder of Carlos Lemaster on April 3, 1961.

The information alleges that the defendant did willfully, maliciously and feloniously fire from a certain shotgun into the chest of Lemaster, leaden pellets from which he did die. No verdict of the jury appears in the record, but it is apparent from the records before us that he was tried by a jury, convicted of first degree manslaughter and his punishment fixed at 25 years in the penitentiary. Judgment and sentence was accordingly entered, from which this appeal has been perfected.

Briefly, the facts are that officer Pilkington, of the Tulsa police department, on the day in question was cruising in the area of Twelfth and Peoria Streets in the city of Tulsa, and observed a car that had been reported stolen. While checking the license plate to confirm his belief, the automobile pulled out, going south on Peoria Avenue. Then an extended chase over Tulsa streets ensued. Shortly after the chase began two shots were fired at the police car from the stolen automobile, blasting the rear windshield out of the stolen car. Pilkington fired his pistol into the air, but the occupants of the stolen car paid no heed. After a short time the stolen car left Peoria Avenue, and took to Riverside Drive, where the driver lost control of the stolen car, which jumped the curb and went into a steel wire fence and stopped. All of the occupants of the stolen car, except Lemaster and including the defendant Bell, got out of the automobile. Lemaster was on the back seat, bleeding from chest wounds, from which, as heretofore indicated, he died.

The driver of the stolen car was Donald Wayne Parker. Seated in the middle by the side of Parker, was Beverly Jean Melton, and on her right was this defendant, Gerald Franklin Bell. On the back seat of the car on the left was John Dillard, Carlos Lemaster was in the center, and to his right was Dennis Wright.

All of these parties were in the car when the officer spotted them at a dairy maid establishment. When Officer Pilkington pulled up behind them they took off rapidly in flight. It appears that during the chase that followed Bell fired the shots from the double barrel shotgun in agreement with some of his cohorts. Then Bell reloaded the gun from a box of 12 gauge shells handed to him by Lemaster, and he fired another shot at the officers. About this time the car jumped the curb at Riverside Drive, and the riding became very rough, throwing the occupants on the rear seat up against the ceiling of the automobile. Lemaster was heard to exclaim as the occupants fled the car, "Why did they shoot me?" Two pistols were taken from the car in addition to the shotgun. All the guns and a box of shells had been taken from Bell's father's home, without his father's knowledge.

The defendant testified that the last time he had the gun before the fourth shot was fired was when he placed it against the back of the front seat. This was refuted by Beverly Jean Melton, the girl, who testified that the last time she saw the gun it was in Bell's hands, and that it was never placed next to the back of the front seat.

After this unfortunate affair the gun was found about 35 feet behind and to the left of the stolen automobile where it jumped the curb.

The defendant testified on cross examination that he shot at the police car to stop it, because he was afraid, due to the fact that the car they were in was stolen.

These are substantially the facts upon which the defendant was convicted. The evidence presented a case for the sole consideration of the jury. The defendant

being engaged in the commission of a felony at the time of the homicide, the jury could have found him guilty of murder under Title 21 O.S.1961 § 701, subsection 3, and this record would have sustained such a finding.

The defendant raises several legal propositions, which will be considered in the order of their presentation.

■ First, the defendant contends that the trial court committed fundamental error in permitting it to be shown that the defendant had been confined in a training school. (At the time of trial, Bell was 16 years of age, and subject to trial as a common criminal. Ex parte Lewis, 85 Okl.Cr. 322, 188 P.2d 367.) On direct examination by his own counsel, the defendant was asked, "Gerald, have you ever been convicted of any crime?" and the answer was, "No, sir."

On cross examination he was asked if he had ever been in reform school and the answer was, "I have been to a training school." When asked where, he replied, "At Helena." The record supports counsel that he registered vigorous objection to the question and answer. The trial judge overruled the objection on the ground that the defendant in testifying he had never been convicted of a crime opened the matter, and thereby put the defendant's character and reputation in issue, and rendered proper the inquiry on cross examination.

■ The rule is correctly stated in Saunders v. State, 44 Okl.Cr. 84, 279 P. 908, in the first syllabus of which this court said:

"Where a defendant in his direct examination puts his previous good character or reputation in issue by testifying that he has not been in any previous trouble except for a charge of possession of whiskey which is still pending against him, the state on cross examination may inquire into the previous conviction of the defendant on a felony charge, even though such conviction may have been reversed."

In People v. Buchanan, 119 Cal.App. 523, 6 P.2d 538, in the body of the opinion it was said:

"* * * [I]t is apparent from the transcript that defense counsel was familiar with the fact of the arrests and the consequent proceedings in the juvenile court, and no contention is made that there was any lack of good faith on the part of the prosecutor. * * * The fact that the arrests and charges were made while appellant was a minor and resulted in proceedings in the juvenile court does not affect the admissibility of the evidence or the propriety of the questions."

To the same effect see Pullens v. State, 51 Okl.Cr. 25, 299 P. 231.

■ The argument relative to juvenile proceedings being a matter of improper inquiry, is beside the point. The record does not support the contention. The defendant, upon reaching his sixteenth birthday, ceased to be a child within the provisions of Title 10 O.S.1961 § 101, since said provisions are applicable only to boys under 16 years of age, and girls under 18 years of age. Ex parte Lewis, supra. It is apparent that the provisions of Title 10 O.S.1961 § 101 are not available to this defendant, when he takes the witness stand in his own behalf and attempts to establish good character he thereby waives the right to object to cross examination. However, the matter was opened up by defense counsel on direct examination. Counsel sought to create a false impression of immaculate conduct and angelic character when defendant's past conduct would not support the same. By opening up the matter and by making his character an issue, he then abandoned his haven of refuge to keep his character hid under a bushel, and thereby converted it into a form of condemnation, bringing himself within the rule of Saunders v. State, supra; Pullens v. State, supra; People v. Buchanan (Cal.) supra. We are of the opinion there was no error in this part of the proceedings, and no inquiry as to

particular acts was involved, but the inquiry was confined to a general status.

■ The second point raised by the defendant is that the trial court committed prejudicial error in permitting reference to be made to the policy of the Oklahoma parole system. Mr. Sims, county attorney, in his argument made reference, in effect, to the fact that convicts are generally released after serving only about half of their sentences. Defendant objected, was overruled and saved his exceptions. Defendant cites Bean v. State, 58 Okl.Cr. 432, 54 P.2d 675 as committing Oklahoma to condemnation of such argument. That case does not afford this defendant a reversal since the evidence of guilt herein amply supports the jury's verdict. In that case the court in its instructions commented on the fact that when a defendant is convicted of a felony in the State of Oklahoma and receives a prison sentence as a punishment therefor, he does not necessarily serve the entire term of punishment imposed, for the reason that the laws of this state make a provision for commutation of time for good behavior. Thereafter the court set forth the table providing for such commutation under varied conditions. In that case the late Judge Davenport said:

"This court has many times held that it is not every erroneous instruction that entitles a defendant to reversal, and especially so as in this case, where the testimony clearly shows the defendant guilty of manslaughter in the first degree, the instruction opened the way for the jury, and perhaps did cause it to impose a greater sentence on the prisoner than it would have imposed had the instruction not have been given.

"Considering all the facts and circumstances in the case, and the fact of the testimony showing the guilt of the defendant of manslaughter in the first degree, we do not think that the erroneous instruction given entitles the defendant to have his case reversed.

However, we believe the giving of the instruction caused the jury to impose a greater punishment on the defendant than it would otherwise have given, and that the judgment * * * should be modified * * *."

The state relies on Hardeman v. State, 15 Okl.Cr. 229, 175 P. 948 holding that the remarks of the county attorney relative to time off for good behavior "were within the realm of legitimate argument, as they merely stated a matter of law which all are presumed to know, and the contention 'that this court would be acting in the interest of justice to reverse this case on account of such statement' is without the slightest merit."

■ We are of the opinion that this is bad law, because the rules in relation thereto are based entirely upon conditions subsequent to the trial and have no bearing upon the trial proceedings. It is highly improper for the county attorney to indulge in speculation thereon. Certainly even though it relates to matters everyone is presumed to know, it deals with matter entirely prospective in nature, the conditions of which cannot and should not be anticipated. The law does not make it any part of the jury's province to speculate on the defendant's conduct in the penitentiary, and the awards of grace he may receive because of good behavior. In fact, the jury's roll is that of an arm of the judicial branch of the government, and the incarceration of a convict is one of administration for an arm of the executive branch of the government. To permit the jury to project itself in this manner into the executive branch of the government is clearly contrary to our constitutional concept of division of powers. Nevertheless, we agree with both the cases above cited in this respect, that while the matter may not constitute grounds for reversal in every case, it may be grounds for modification, depending upon the degree of defendant's guilt, and the nature of the evidence in support thereof. Each case must depend upon the facts therein involved as to the effect of

such comments by the county attorney as to whether they are grounds for reversal or modification. Herein we are of the opinion that the matter is ground for modification, but in this instance, is certainly not grounds for reversal, and Hardeman v. State, supra, in so far as it holds such comment is permissible because it is the law and everyone is presumed to know it, is expressly overruled. Even though everyone is presumed to know the law, it is highly improper for the state to use the law applicable in futuro as an instrument to obtain greater penalties against defendants. Nothing should be permitted to weaken the jurors' sense of obligation in their administration of justice, since such is contrary to the spirit of fairness which should govern all American trials.

The defendant asserts that the trial court erred in permitting the state in its closing argument to state, in substance, that an outbreak of teenage violence would result if the defendant was found not guilty, and that he otherwise inflamed the jury.

The entire argument of both the state and the defense are not contained in the record, only the argument made by the county attorney in his closing remarks is set forth. The court has repeatedly held error cannot ordinarily be predicated upon mere unexplained excerpts from the argument of counsel, when the entire argument of both sides is not before the court. Walker v. State, 91 Okl.Cr. 1, 214 P.2d 961, and numerous other cases, including Disheroon v. State, Okl.Cr., 357 P.2d 236, where the court said:

"Ordinarily, error cannot be predicated upon mere unexplained excerpts from the remarks of counsel to the jury. Enough must appear of record to advise the appellate court of what preceded the alleged objectionable remarks and their meaning to be deduced from the context, and whether or not they were invited or provoked by remarks made by opposing counsel.

"The right of argument contemplates a liberal freedom of speech, and the range of discussion, illustration, and argumentation is wide. Counsel for both the state and the defendant have a right to discuss fully from their standpoint the evidence and the inferences and deductions arising from it. It is only when argument by counsel for the state is grossly improper and unwarranted upon some point which may have affected defendant's right that a reversal can be based on improper argument."

In Walker v. State, supra, we asserted the test of prejudice of closing argument to be, if the evidence of guilt was so clear and convincing that if no argument had been made on either side the result would have been the same, then the argument was not a prejudicial factor. Such is the situation as to the closing argument herein. This defendant's guilt is so apparent that the arguments were not determinative of the issues herein involved.

The defendant asserts that a statement he made to the police officers was erroneously introduced into evidence. In this contention the defendant is mistaken. The record shows it was never introduced, although it was marked Exhibit # 6, and identified by the defendant as being his statement and bearing his signature on the last page, and his initials on the other page. He was asked to look it over very carefully, to take his time, before he answered the question.

On direct examination defendant testified in substance that before the car crossed the curb on the left hand side of Riverside Drive and plunged into the fence, he had stopped shooting and had put the gun down and laid it up against the front seat, and that he did not have the gun in his hands when it went off and shot the decedent, Carlos Lemaster. It was then that he was confronted with the following, and only, portion of his statement to the effect that "We had the wreck, and I was facing towards the back with the shotgun and when we hit the fence * * *." He admitted that was what he said at the police

station, but said that he was testifying at the trial, and that was not correct. He further testified on cross examination that he had put the gun on the front seat before the wreck and he didn't remember anything that happened when they had the wreck.

The defendant contends it was error to permit the use of any portion of the statement, since the proper predicate was not laid for its introduction. The basis for this contention is that the defendant was 16 years of age, and it was not shown that he made the statement in the presence of his parents, or that he had the aid of counsel, and that he was advised of his constitutional rights and his right to refuse to answer any questions that might incriminate him. It is further contended by defendant that it does not appear from this record that beyond all doubt this minor defendant fully understood the results growing out of a waiver of these rights. Clark v. State, 95 Okl.Cr. 375, 246 P.2d 422; Fields v. State, 77 Okl.Cr. 1, 138 P.2d 124; Olivera v. State, Okl.Cr., 354 P.2d 792.

 We are of the opinion the foregoing predicate does not appear in this record and under the circumstances herein involved, the statement thus obtained would not be admissible for any purpose. We are therefore not called upon to determine whether the statement involves an expression of criminal intent, or whether it constitutes an acknowledgment of guilt or an inculpatory statement and a confession of guilt, or whether it is but an acknowledgment of some fact or circumstance in itself insufficient to constitute an acknowledgment of guilt, and tending only toward the proof of the ultimate fact of guilt. 23 C.J.S. Criminal Law § 816, p. 155, and therefore exculpatory and not within the common law and statutory rules relating to confessions. Nevertheless, this attempt to impeach the defendant by means of this portion of his statement, contradictory to his own testimony, is not reversible error, since defendant's sworn testimony in this regard was contradicted by Beverly Jean Melton in both her testimony in chief and on re-

buttal, and proof of his own contradictory admission in the police statement was cumulative and harmless error.

The defendant complains of instruction No. 27, and refers to another brief in a prior case; Young v. State, Okl.Cr., 373 P.2d 273, and seeks to incorporate by reference the argument therein in this brief here. This question relates to the trial court's definition of "reasonable doubt".

 It has never been the practice of this court to permit the inclusion of arguments in former cases by reference, and we do not propose to recognize such herein. There is no end to the mischief and research that would be imposed on appellate courts if this practice were permitted. It suffices that this court has repeatedly held that the trial courts should not define "reasonable doubt." Young v. State, supra, where we said:

"The defendant cites several cases in which, he urges, that this Court has condemned the trial courts' attempts to define reasonable doubt. Defendant cites as authority the following cases: Harris v. State, 10 Okl.Cr. 417, 137 P. 365, 139 P. 846; Patzwald v. United States, 7 Okl. 232, 54 P. 458; Price v. State, 1 Okl.Cr. 358, 98 P. 447; Gibbons v. Territory, 1 Okl.Cr. 198, 96 P. 466; Reeves v. Territory, 2 Okl.Cr. 351, 101 P. 1039; Gragg v. State, 3 Okl.Cr. 409, 106 P. 350; Jones v. State, 54 Okl.Cr. 14, 13 P.2d 872; Abbott v. Territory, 1 Okl.Cr. 1, 94 P. 179, 16 L.R.A.,N.S., 260; Moore v. State, 90 Okl.Cr. 415, 214 P.2d 966.

"We agree with our predecessors that the trial court should not undertake to define the terms 'reasonable doubt', however, where the court below has given an instruction defining 'reasonable doubt', we will carefully examine the instruction with reference to the whole record before us, and if it should appear from such scrutiny of the record that the effect of such instruction is not one of injury to the

defendant, we will not reverse the cause solely on the basis of such instruction."

Such is the situation herein. The giving of instruction No. 27 did not prejudice the defendant herein.

Finally, the defendant contends the trial court did not instruct on the defendant's theory of his defense, and that instruction No. 18 was erroneously given, and further, the court erred in failing to give his requested instructions 1, 5 and 6.

We are in accord with the proposition that an accused has a right to have his theory of the defense given the jury in proper instructions. Thompson v. State, 97 Okl.Cr. 253, 261 P.2d 900; Lac Coarce v. State, Okl.Cr., 309 P.2d 1113; Easter v. State, 74 Okl.Cr. 114, 123 P.2d 691; Tillman v. State, 82 Okl.Cr. 276, 169 P.2d 223.

We have held that a defendant is entitled to an instruction covering his theory of defense, even though under the facts it may appear ridiculous, but even under such conditions the instructions must correctly state the law, and if such an instruction cannot be prepared on defendant's theory within the provisions of the law, then the trial court is not required to so instruct. The courts are under no duty to twist the law to suit the arbitrary will or fancy of the accused.

Herein the defendant sought by his requested instructions to bring the case within the provisions of Title 21 O.S.1961 § 731, reading as follows:

"Homicide is excusable in the following cases:

"1. When committed by accident and misfortune, in lawfully correcting a child or servant, or in doing any other lawful act, by lawful means, with usual and ordinary caution, and without any unlawful intent.

"2. When committed by accident and misfortune in the heat of passion, upon any sudden and sufficient provocation, or upon a sudden combat provided that no undue advantage is taken, nor any dangerous weapon used, and that the killing is not done in a cruel or unusual manner."

In fact, the defendant's brief discloses:

"Defendant's theory of defense in this case was excusable homicide and it was obvious that this was defendant's theory of the case from the time of the opening statement (which does not appear in the case-made) throughout the direction taken by defendant's counsel in the cross-examination of state's witnesses and the direct examination of defendant and his witnesses and was apparent in the arguments of counsel for both * * *".

It thus is clear that the defense sought to be established was excusable homicide.

The defense overlooked the essential element of the foregoing statute defining excusable homicide, as applied herein in the following language, "or in doing any other lawful act, by lawful means", and in the language, "nor any dangerous weapon used."

In this case the death was caused while engaged in an attempted escape in a stolen automobile, and as found by the jury while firing a double barrel shotgun at the pursuing officers. Cases applying the principle overlooked by defense counsel are Wadsworth v. State, 9 Okl.Cr. 84, 130 P. 808, reading in part as follows:

"This law cannot be invoked by appellant because he killed the deceased by shooting him with a double-barrel shotgun, which was a dangerous weapon."

In Gaunce v. State, 22 Okl.Cr. 361, 211 P. 517, it was said in part:

"Excusable homicide is where death results from a lawful act by lawful means, accomplished accidentally or by misfortune or misadventure * * *. Wadsworth v. State, 9 Ok.Cr. 84, 130 P. 808.

"The word 'misfortune' as here used is analogous to the word 'misadventure,' as defined in volume 2, Third Revision

Bouvier's Law Dictionary, 2221, as follows:

"'When applied to homicide, misadventure is the act of a man who, in the performance of a lawful act, without any intention to do harm, and after using proper precaution to prevent danger, unfortunately kills another person.'

"The constituent elements of excusable homicide are three, viz.: First, absence of an intent to do harm; second, the lawfulness of the act resulting in death; third, proper precaution to avoid mischief. Notes, annotations and citations, 3 L.R.A.(n.s.) 1153. For example, if a workman in a town was on a house and threw off a scantling, and give due notice of the intent to throw it, and it hit someone and killed him, that would be an accident, and he should go free; but if a workman in a town should throw a piece of scantling or other heavy substance off a house into a street where people were passing, and it should strike and kill someone, this would be manslaughter.

"From the statement of facts it will be seen that in this case there was no issue of excusable homicide."

Such is the situation in the case at bar, the issue sought to be raised is non-existent. The defendant's contention relative to his Instruction No. 5 on excusable homicide might have had a valid base if we could overlook the statutory provision "lawful act." In Mead v. State, 65 Okl.Cr. 86, 83 P.2d 404, this court said:

"The word 'misfortune' as used in St.1931, § 2235, 21 Okl.St.Ann. 731, excusing homicide when committed by accident and misfortune in doing a lawful act, is analogous to the word 'misadventure', which, when applied to homicide means, the act of a man who in doing any lawful act, and without unlawful intent, unfortunately kills another person."

Herein the defendant's intent to kill the officer, whom he was shooting at, when he shot his friend, was carried over to his associate, whom he killed.

In Mead v. State, supra, it was also held:

"Instructions should be applicable to facts in evidence, and to all proper deductions and interpretations thereof, and not to questions not presented or covered by evidence."

Specifically, the defendant complains of the trial court's Instruction No. 18, setting forth in light of the applicable law the defendant's theory as developed by the evidence. We have examined Instruction No. 18, which reads:

"The defendant denies he is guilty of murder or manslaughter in either of the degrees. He contends that he did not shoot the deceased. He says that if the deceased met his death by reason of a discharge of a shotgun, that it occurred after he had completely ceased using the gun and after he had completely abandoned his efforts to resist arrest by the police officers. He specifically contends that after the police officer returned his fire, that he dispossessed himself of the gun by laying it in the seat of the car and that he did not have the gun in his hands at the time it discharged and killed the deceased, if, in fact, it did. Therefore, if you find and believe from the evidence, or have a reasonable doubt thereof, that the deceased did not meet his death by a shotgun blast from a gun in the hands of the defendant, you cannot find him guilty of murder. If you find, beyond a reasonable doubt, that the deceased met his death by reason of a discharge from this shotgun while the defendant was shooting at the officers of the law, then, as I have told you under these instructions, he would be guilty of murder. But, if you find that the defendant was shooting at the car rather than at the officers and with no intent to injure an officer he would not be guilty of killing while engaged in the commission of a felony, but under these circumstances the most he could

be guilty of would be first degree manslaughter. If you find and believe from the evidence or have a reasonable doubt that the defendant 'had' completely abandoned his intention to resist arrest, and had dispossessed himself of the weapon and that the deceased met his death solely by reason of the gun being discharged by the force of the collision and while not in the hands of the defendant, the defendant would be guilty of neither murder nor manslaughter in the first degree and would be entitled to be acquitted, unless you further find, beyond a reasonable doubt, that decedent met his death by reason of culpable negligence on the part of the defendant, as that term has been defined for you, which proximately caused the death of the decedent, in which event defendant would be guilty of manslaughter, in the second degree.

"Unless you find, beyond a reasonable doubt, that defendant is guilty of murder, or manslaughter in the first degree, or manslaughter in the second degree, or if you entertain a reasonable doubt thereof, then your verdict should be 'not guilty'."

 In our opinion this instruction adequately covered the defendant's theory of his defense in all its essential and evidentially established phases. It would have been erroneous for the trial court to have given the defendant's instructions 1, 5 and 6, since they were predicated upon a plain misinterpretation of the law, either by inadvertance, omission or erroneous assumption that the defendant was engaged in a "lawful act by lawful means". On no other basis that defendant was engaged in "a lawful act by lawful means" would the law of excusable homicide be applicable. In our opinion, the court's Instruction No. 18 covered every phase of the law applicable to the situation at bar, based on the established evidence.

For all the foregoing reasons, we are also of the opinion that the defendant had a fair and impartial trial, except for the argument of the county attorney, which causes us in the interest of justice to modify the sentence from 25 years, to a term of 20 years in the state penitentiary.

The judgment and sentence as so modified is affirmed.

NIX, P. J., and BUSSEY, J., concur.