Robert Renee TEMPLER, Plaintiff in Error,

v.

The STATE of Oklahoma, Defend-
ant in Error.

No. A–16042.

Court of Criminal Appeals of Oklahoma.

March 1, 1972.

Rehearing Denied March 16, 1972.

Frank R. Courbois, Oklahoma City, for
plaintiff in error.

Larry Derryberry, Atty. Gen., Raymond Naifeh, Asst. Atty. Gen., for defendant in error.

## OPINION

SIMMS, Judge:

Robert Renee Templer, hereinafter referred to as defendant, was charged, tried, and convicted in the District Court of Oklahoma County, Oklahoma, for the offense of Illegal Sale of a Stimulant (LSD); the jury fixed his punishment at three (3) years imprisonment, and from said judgment and sentence, a timely appeal has been perfected to this Court.

At the trial, Bryan L. Tipton, Chief Chemist for the Oklahoma State Bureau of Investigation, identified State's Exhibit Number One as an evidence package submitted to his laboratory by Captain J. W. Forney, of the Midwest City Police Department, on the twelfth day of November, 1969. Tipton testified the evidence consisted of three strawberry-colored tablets which he inspected visually, and then selected one which was subjected to chemical testing in a procedure known as thin-layer chromotography. He testified that the test revealed the tablet contained lysergic acid diethylamide, commonly called LSD. The chemist testified on cross examination that he did not subject the evidence to a quantitative analysis, insofar as the quantity of LSD contained in the tablet was concerned.

Detective Captain J. W. (Bill) Forney, of the Midwest City Police Department, testified that the initials on the envelope in which State's Exhibit Number One was contained were his, and that he placed those initials on that envelope on November 12, 1969, after receiving the envelope from Officer Jack Hill, then transported the envelope and its contents to the State Crime Laboratory, and gave it into the possession of Bryan Tipton.

Detective Jack Hill, of the Midwest City Police Department, testified that on the eighth day of November, 1969, he and his partner, Eddie Thomason, were at the Holiday Inn in Oklahoma County, located at Interstate 40 and Sooner Road, and during the evening hours had occasion to see Patrick Crawley. Hill testified that Crawley left the Holiday Inn room with two individuals named Joe Bailey and Eddie Nash, returning at approximately 8:00 o'clock p. m. on the same evening, at which time Crawley had three small strawberry-colored, speckled tablets, about quarter-grain size. Hill further testified that Crawley took the tablets out of his shirt pocket and handed them to him, and at that time, they were put into an envelope and initialed. Hill then identified his initials on the envelope designated as containing State's Exhibit Number One. Hill testified that he later took the envelope and gave it to Captain Forney.

Patrick Crawley testified he was a former Pinkerton Detective who commenced work for the Midwest City Police Department on the thirteenth day of October, 1969, and immediately was assigned as an undercover narcotics agent. In connection with that assignment, he testified that he let his hair grow, grew a beard and wore a loud multi-colored shirt and bluejeans. When asked if he had seen the defendant on the eighth day of November, defendant interposed an objection and at that point, an Evidentiary Hearing was held in chambers with regard to the in-court identification.

Crawley testified on the Evidentiary Hearing that he was advised by one of his superiors in the Midwest City Police Department on the thirtieth day of January, 1970, that a suspect was in custody in the Oklahoma City Jail, who was thought to be the defendant in this case. Crawley was advised to proceed to the jail to make an identification, if possible. Crawley testified that he did not, at that time, know the defendant's name, other than the name Renee, and that he was not told the defendant's name until he reached the jail, where the jailer pulled a card, which Crawley did not see, and advised Crawley that the defendant's name was Robert Renee Templer. He testified he did not see any photo-

graphs, nor was he advised what the defendant was wearing or what he looked like, nor was he advised of the exact location of the defendant. He testified that he walked with the jailer toward the group of cells, and upon coming to one large cell which contained a number of individuals, he observed the person who had sold the LSD to him back in November, some 60 days previously.

Crawley testified there were a "number" of persons in the cell with the defendant, that he did not pay any particular attention to the clothes that they were wearing, but he thought the individuals were dressed similarly. Crawley stated, "I spotted the man immediately." We note that on direct examination, counsel for the defendant did not inquire of the witness Crawley further as to the description, either as to age, hair color and length, build, etc., of the other persons in the cell with the defendant. When asked by defense counsel if he was directed to a particular cell, the witness Crawley stated, "No, we just started walking down the hall. I'm sure he was going to the cell, but immediately coming in front of this particular cell, I observed the man I had made the buys from." Counsel for the defendant brought out two slight discrepancies in Crawley's testimony with regard to the clothing and the color of the clothing which defendant wore at the time of the alleged buy. However, Officer Crawley testified in response to a question from the prosecutor that he based his identification of the defendant as having seen him at the time the three alleged LSD tablets were sold to him, and not on the basis of having seen him in the jail. Defense counsel then asked Crawley if he had not refreshed his memory of seeing Mr. Templer in the jail, did he think he would have been able to identify him that day. The witness answered, "I definitely do."

The motion to suppress the in-court identification was overruled.

Crawley then resumed the stand in the presence of the jury and testified that on the date in question, he met the defendant in front of the White Light Club in the 2900 Block of Paseo in Oklahoma City, Oklahoma County, Oklahoma, at approximately 7:00 o'clock p. m. He testified that Bailey and Nash were with him at the time. Crawley testified that when he first arrived, he made contact with an individual by the name of Jim Cook, who then pointed out the defendant. Crawley said he and Cook approached the defendant and Cook at that time asked the defendant if he had any LSD. Crawley testified he told the defendant that he needed three tabs of LSD, and that they walked a short distance to the corner of Twenty-Ninth Street, and around the corner of the building, at which point the sale took place.

Crawley testified that he bought three tabs of LSD at Three Dollars apiece. He testified that there was a bright, white naked lightbulb over the doorway of the club area, and that in this brightly lighted situation, he had an opportunity to observe the defendant for approximately fifteen minutes. Crawley testified that after the sale, he returned to the Holiday Inn, where he turned the LSD tablets over to Detective Jack Hill, after marking the envelope containing the tablets. He then identified the envelope introduced into evidence as State's Exhibit Number One.

Joe Marshall Bailey, called as the first witness in behalf of the defendant, testified that he was a twenty-year-old former Oklahoma City resident, serving time in the Oklahoma State Penitentiary on two convictions for possession of marijuana. He testified that he and the defendant had been cell mates in the Oklahoma County Jail, and that prior to that time, he had never seen the defendant before. On cross-examination, he denied ever working with Patrick Crawley, Jack Hill, or Eddie Thomason in an undercover narcotics investigation.

Vernie Templer testified that she is the defendant's mother, that she had no knowledge of the whereabouts of the defendant's natural father, that the defendant is one of five children, and that to her knowledge,

his reputation for truth and veracity is good. She testified that her son would have finished high school next year, but that he dropped out, and was living at home with his four sisters.

Teresa Templer testified that she is the nineteen-year-old sister of the defendant, and she testified that as to his truth and veracity and his general reputation in that area in the community, she could speak only for herself, and that their relationship was a good one.

Kevin Templer testified that he is the defendant's fifteen-year-old brother, and that so far as he knew, his brother's reputation for truth and veracity in the community as good.

The defendant testified in his own behalf that he is eighteen years of age. He testified that on the night in question, he did not remember where he was, but that Officer Crawley had never purchased any LSD from him. He also denied receiving Nine Dollars for the sale of the LSD. On cross examination, the defendant testified that he knew what LSD was, and that he had seen it before. He also testified that the strawberry-colored tablets introduced as State's Exhibit Number One resembled LSD, so far as he could tell. He denied being with Patrick Crawley, Eddie Nash, and Joe Bailey on the date in question. He then testified that he could have been there previously, and that he was a regular patron.

Officers Jack Hill and Patrick Crawley were recalled as rebuttal witnesses, and testified that the Joe Marshall Bailey who had appeared there in the courtroom that day was the same Joe Marshall Bailey whom they saw on the night in question.

The defendant cites as his first and primary ground of error the proposition that the trial court erred in overruling the defendant's motion to suppress the in-court identification by reason of the fact that such identification was a tainted line-up conducted without benefit of counsel.

The defendant cites as primary authority for this assertion United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) and Thompson v. State, Okl. Cr., 438 P.2d 287 (1968), the latter being the case in which this Court adopted the guidelines set forth in *Wade,* supra, and Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). *Wong Sun,* supra, sets out the test for determining whether, granting the establishment of the primary illegality, the evidence to which the objection is made is a result of exploiting that illegality or a result of means sufficiently distinguishable to be purged of the primary taint. In *Wade,* supra, the Court deemed that the appropriate procedure there would be to vacate the conviction, pending a hearing to determine whether the in-court identification had an independent source or whether the introduction of the evidence was harmless error.

In *Thompson,* supra, this Court made the recommendation to Oklahoma trial courts that when the issue is extra-judicial identification where the defendant is without the assistance of counsel, or has effectively waived same, the Court should conduct a hearing outside the presence of the jury to determine if the witness can, independent of the prior identification, identify the defendant. We note that in the case at bar, that is exactly what the trial court did. We also observe that this Court's pronouncement in Jernigan v. State, Okl.Cr., 485 P.2d 778 (1971), deals squarely and completely with the issues in the case at bar. In *Jernigan,* supra, Judge Nix wrote:

"In Thompson v. State, Okl.Cr., 438 P.2d 287 (1968), this Court acknowledged the requirements of the United States Supreme Court in United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), concerning all pre-trial line-ups after June 12, 1967, and set forth the guidelines for such line-ups. Under these same cases it is mandatory for the trial court to hear evidence outside the jury's hearing on whether a pre-trial line-up absent counsel renders an in-court identification inadmissible.

This procedure was followed in the instant case and we are persuaded the evidence presented outside the jury's hearing permitted an in-court identification by the witnesses having satisfied the test that 'the in-court identification of the defendant had an "independent source" come at by "means sufficiently distinguishable to be purged of the primary taint" of the pre-trial exhibition and identification absent counsel.' Stewart v. State, Okl.Cr., 458 P.2d 646, at 649 (1969). Accordingly, we find no violation of United States v. Wade, supra."

■ Inasmuch as the court, in the instant case, followed the dictates of *Thompson*, supra, in conducting an Evidentiary Hearing to determine whether or not, in fact, the in-court identification had an independent basis other than the extra-judicial viewing, we find that the court did not commit error in its ruling on the admissibility of the in-court identification by the witness Crawley.

Next, the defendant urges that the State in its case failed to prove that the tablets contained a substance which had a stimulating effect upon the central nervous system. But, the defendant cites no argument or authority in support of this particular contention, and refers the Court to the defendant's brief in Pulliam v. State, Okl.Cr., 491 P.2d 353 (1971).

We should first like to point out that *Pulliam*, supra, has since been decided on other grounds, and we should also like to refer the defendant to Bell v. State, Okl. Cr., 381 P.2d 167 (1962), wherein we stated:

"It has never been the practice of this court to permit the inclusion of arguments in former cases by reference, and we do not propose to recognize such herein. There is no end to the mischief and research that would be imposed on appellate courts if this practice were permitted."

■ The precise question of whether or not it is necessary for the State to negative any exceptions, excuses, or exemptions upon the defendant was covered in Stallcup v. State, Okl.Cr., 401 P.2d 197 (1965). See also 63 O.S., § 418, pertaining to narcotic drugs:

"In any complaint, information, or indictment, and in any action or proceeding brought for the enforcement of any provisions of this Act, it shall not be necessary to negative any exception, excuse, proviso, or exemption, contained in this Act, and the burden of proof of any such exception, excuse, proviso, or exemption, shall be upon the defendant." Laws 1935, p. 55, § 18.

Therefore, we also find the defendant's second proposition to be without merit.

■ Next, the defendant complains that he was not proven guilty beyond a reasonable doubt, and for that reason, the case should be remanded with directions to dismiss. The evidence adduced at trial, even though conflicting, clearly presented a fact question for the jury. The Court of Criminal Appeals, however, will not reverse a case for insufficiency of the evidence if there is any substantial evidence on which the jury could reasonably base its verdict of guilty. Moore v. State, Okl.Cr., 311 P.2d 825; Smith v. State, Okl.Cr., 313 P.2d 538; Hobbs v. State, Okl.Cr., 435 P. 2d 181. Questions of fact are for the sole determination of the jury, and where there is any evidence reasonably tending to support the jury's finding, the same will not be disturbed on appeal. Spigner v. State, Okl.Cr., 312 P.2d 906.

Fourthly, the defendant complains of error in trial court by a refusal to allow the defense counsel to use the term "moral certainty" as synonymous with "beyond a reasonable doubt" in voir dire examination of the jury and then refusing to allow the defendant to reopen his voir dire examination to explain the "moral certainty" was a criteria to be applied by the jurors in their consideration of the evidence.

The defendant goes on in his fifth proposition to urge that the court committed

error in refusing to allow the defendant an instruction on the terms "moral certainty" and "beyond a reasonable doubt." Defendant cites as his only authority for his fourth and fifth propositions the case of Gray v. State, 56 Okl.Cr. 208, 38 P.2d 967 (1934), wherein the Court held that while the terms "moral certainty" and "beyond a reasonable doubt" are synonymous in some dictionaries, the difficulty is that the words "moral certainty" add nothing to the words "beyond a reasonable doubt," as one may require explanation as much as the other. We also observe that *Gray*, supra, as well as a number of more recent cases, holds that it is not necessary for the trial court to define what is meant by a "reasonable doubt," and trial courts have been repeatedly admonished against giving any instruction attempting to define the term "reasonable doubt."

In more recent years, trial courts have been severely criticized by this Court for attempting to define the term "reasonable doubt." See Bell v. State, Okl.Cr., 381 P.2d 167 (1963); and, it has even been held reversible error to so define this difficulty-of-definition term. Wilson v. State, Okl.Cr., 403 P.2d 262 (1965); Lee v. State, Okl.Cr., 430 P.2d 858 (1967).

■ We reiterate the phrase "reasonable doubt" is self-explanatory, and definitions thereof do not clarify its meaning, but rather tend to confuse a jury; therefore, instructions defining it are unnecessary, and should not be given. The same logic should apply in attempts in voir dire examinations to explain to the jury what is meant by "reasonable doubt."

In conclusion, we observe that the record is free of any error which would justify modification or require reversal. The judgment and sentence is, and the same is hereby, affirmed.

BUSSEY, P. J., and BRETT, J., concur.