Eula CARDWELL, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–12321.

Criminal Court of Appeals of Oklahoma.

July 18, 1956.

Hughes & Hughes, Hobart, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Lewis A. Wallace, Asst. Atty. Gen., for defendant in error.

POWELL, Judge.

Eula Cardwell was charged by information filed in the county court of Tillman County with the offense of unlawful possession of intoxicating liquor, was tried before a jury, convicted and his punishment fixed by the jury at a fine of $300 and 90 days confinement in the county jail.

Defendant has appealed and will be referred to as in the trial court.

It is argued (1) that the evidence is insufficient to sustain the judgment of conviction; and, (2) that the assistant county attorney made prejudicial remarks in his argument to the jury.

The State in making out a case developed by George Mathews, City Marshal of Frederick, that he procured a search warrant to search the defendant's cab business and bus station in Frederick; that the search was made about 7 P.M. on January 2, 1954; that he was accompanied on the search by officers Frank Barbee, Fred Callaham and Leland Smith; that when they arrived at the place of business the defendant Eula Cardwell and his wife were present. Witness did not remember that there were any other persons present. The warrant was served upon the defendant,

and witness told him that he would like to look around as he had been informed that there might be some whiskey there. The bus and taxi-cab room was of dimensions of about 20′ x 32′; and there was a place for baggage back of the ticket counter about 4′ x 4′; and there were two telephones, one for the bus station, and one for the taxi-cab business. The officers noted two little cases sitting over on a shelf—looked like brief cases, and officer Barbee picked one up and there was rattling of bottles inside. Then a battered-up looking suit case was lifted and bottles rattled. These containers were not locked and were opened and whiskey discovered. There was a footlocker trunk that had to be pried open. It was about half full of whiskey. In all there were 38 pints of Cascade, tax-paid whiskey, and 15 pints of Old Crow tax-paid whiskey. The whiskey was received in evidence. The officer further testified that he knew the reputation of the place where the liquor was found as to being a place where intoxicating liquor is bought, sold and drunk; that the reputation of the place was bad. There was further evidence by Sheriff Kilgore that the place did not bear such a reputation until after the defendant established his taxi-cab business there.

Concerning the two bags, suit case and locker, officer Mathews testified:

"A.  I kept looking at the ticket and turning it over and I asked them if they had a key. And they said, no they did not have. I looked at the ticket again and Mrs. Cardwell said, 'Mr. Mathews, that ticket doesn't belong on there.—It was just laying around here and I picked it up and put it on there to get it out of the way.' And I says, 'Thank you'. I says, 'I'll take it along and if there's nothing in it, I will return it.' And at that time, Patrolman Smith and I picked it up and carried it out and put it in the car.

"Q.  This Exhibit No. 2, did it have a baggage check on it at all? A. I'm pretty sure that it didn't have."

Officer Mathews on cross-examination said that he did not know who put any of the four containers in which the whiskey was found "back there", meaning the baggage compartment; that he did not know who owned the whiskey or whether it belonged to Mr. Cardwell; that he just had his idea about it; that defendant had come to him and told him that he was making a deal to go in business at the bus station, and that he did go in business there some time afterwards; that although the defendant was present when the whiskey was found, that he was not arrested until the following Monday.

It was developed on cross-examination of officer Barbee that the locker had some kind of tag on it. Said he: "Mrs. Cardwell made the remark that it did not belong on there—it was just laying around there so she put it on there." He said that Mrs. Cardwell claimed to have tagged other of the containers, how many is not clear.

Officer Smith was asked by counsel for the defendant: "You know that she and Mr. Cardwell both told you officers that somebody had come in there and checked all those bags there earlier in the day? A. I suppose that is right."

The court overruled a demurrer interposed to the State's evidence, and two witnesses testified for the defendant: Alvie Hatfield, an employee of the State Department of Agriculture, and defendant's wife Oma S. Cardwell.

Alvie Hatfield, testifying in behalf of the defendant, stated that he had occasion to be at the bus station in Frederick shortly before noon on Saturday, January 2, 1954 and he said that he saw a man come in carrying something resembling a foot locker, but said he would not swear it was the same locker admitted in evidence, but he thought it was. He further said: "Mrs. Cardwell opened a little door there around to the southwest corner of her office space where they generally set baggage when they are not going to leave it for any length of time,

and he scooted it in there." Witness said there were two men, and "they were carrying suitcases." That the men looked like they were 35 or 40 years old, and he had not seen them before nor since that day, though he had lived in the county all his life. He did not know whether the two men came in on the bus or in a car; that he didn't see the men get out of a car, and could not say whether or not a car was there. He did not hear them say anything. He did not say that Mrs. Cardwell checked the baggage.

Mrs. Oma S. Cardwell, wife of the defendant, testified that she was the sole agent at the bus station; that her husband was operating a taxi business but she owned a half interest; that he had a telephone there by the bus station telephone and would answer either phone. She said that about 10 o'clock in the morning on the day of the search, two men came into the bus station and checked Exhibits 1 to 4 at the baggage stand (being the containers in which the whiskey was found), and that she handed ticket stubs to each of the two men who checked the baggage in; that her husband was not present; that she did not remember whether the two men got off the bus, but they came in about bus time; that neither she nor her husband knew the baggage contained whiskey until the officers made the search that night. That about 30 or 40 minutes after the search had been made by the officers, the two men came in and called for their baggage; that when she told them the officers had picked up their baggage the two men ran out of the bus station and she had not seen them since; and she had no idea who the men were. The attention of witness was called to the fact that the evidence showed that one piece of baggage did not have a tag of any sort on it. She said she was almost positive that she put a tag on the piece. She said the men paid her ten cents for each piece when they checked their baggage.

Witness on cross-examination said that after the officers had made the search, they told Mr. Cardwell to come to the court house Monday morning. Here the defendant rested his case.

George Mathews, the city marshal, was called by the State as a rebuttal witness. He said that he had listened to the testimony of Mrs. Cardwell. He took issue with the defense witness concerning the baggage containing the whiskey. In substance he said that the baggage was brought into the bus station not in the morning but about 4:50 or 5 o'clock in the afternoon on the same day of the search. He testified that he was alone in a police car, partially hidden in the alley behind the Chrysler and Plymouth garage, and saw the defendant and another man get out of the defendant's car, commonly known as his "Sunday car," and open the front "and take those two small suit cases out and go hurriedly into the bus station. * * * I had already had the location and I went to the justice of the peace, secured a search warrant, had to sign them, and me and my men went down to search the place."

On cross-examination, witness said that he didn't testify like that on any other occasion because the question was not asked him. He admitted on query that he had heard Mrs. Cardwell testify at the former trial as to when this baggage was brought into the bus station, but that he did not testify on direct examination in the trial of the present case as he had on cross-examination. This ended the evidence.

Counsel for the defendant renewed his demurrer and asked the court to direct the jury to return a verdict of not guilty. The motion was overruled.

■ It is argued that the State at the close of its evidence failed to make out a case. There is much merit to this argument, as the only connection defendant was shown to have had with the whiskey and baggage was that he operated his taxi business out of the bus station and assisted his wife in the bus business. However, the evidence as to whether the baggage in question belonged to the defendant or others under the circumstances recounted, present-

ed a question of fact for the determination of the jury.

On rebuttal the marshal became positive as to the possession of the whiskey. He stated he saw the defendant and another man hurriedly carry the containers into the bus station. It is argued by the defense that the fact that witness Mathews never in the previous trial or in the present case (until on rebuttal) testified to ever seeing the containers in question in the possession of the defendant, supports their theory that the rebuttal evidence amounted to clear perjury.

█ It is, of course, difficult to understand why the witness had not been frank with the county attorney and imparted to him the important and vital information that he had seen the defendant and another man surreptitiously conveying what he thought to be whiskey into the bus station so that this with other information he possessed prompted him to execute an affidavit for a search warrant. If he did impart this information, it was the duty of the county attorney to have developed this in making out his case. At all events witness Mathews stated that he did not reveal this information when testifying before because he was not asked. He did say that he did not know who owned the whiskey. The question was not who owned the whiskey, but who had possession and control over it. Often owners of whiskey get poorer bootleggers to peddle or sell their wares on a commission basis. But at all events, it was within the province of the jury to accept or reject the rebuttal evidence of officer Mathews. The jury, it would appear, gave full faith and credit to his rebuttal testimony.

█ As stated by this court in the case of Scales v. State, 96 Okl.Cr. 73, 248 P.2d 645:

"Where the evidence is conflicting, the weight thereof and the credibility of witnesses is for the jury, and the Criminal Court of Appeals will not substitute its judgment for that of the jury where there is evidence reasonably tending to support the conclusions reached by the jury."

By reason, however, of the omissions of the State and the witness as mentioned, we shall in the interest of fair play, reduce the amount of the punishment assessed.

As to the proposition that the assistant county attorney made prejudicial remarks in his argument to the jury, we have carefully read the record of such remarks, and conclude that such argument was in reply to some of the points brought out in the argument of opposing counsel, and was based on inferences and deductions arising from the evidence.

██ In Hathcox v. State, 94 Okl.Cr. 110, 230 P.2d 927, 929, this court said:

"The right of argument contemplates a liberal freedom of speech, and the range of discussion, illustration, and argumentation is wide. Counsel for both the state and the defendant have a right to discuss fully from their standpoint the evidence and the inferences and deductions arising from it. It is only when argument by counsel for the state is grossly improper and unwarranted upon some point which may have affected defendant's rights that a reversal can be based on improper argument."

By reason of what has been said, the judgment appealed from will be and hereby is modified from a fine of $300 to a fine of $100, and from a jail sentence of 90 days to a jail sentence of 30 days in the county jail; and as so modified, the judgment is affirmed.

BRETT, J., concurs.