Robert Lee HONEYCUTT, Plaintiff
in Error,

v.

The STATE of Oklahoma, Defend-
ant in Error.

No. A–13955.

Court of Criminal Appeals of Oklahoma.

Sept. 20, 1967.

Shelton Skinner, Shawnee, Okl., for plaintiff in error.

G. T. Blankenship, Atty. Gen., Hugh H. Collum, Asst. Atty. Gen., for defendant in error.

BRETT, Judge.

Robert Lee Honeycutt was charged by information filed in the district court of Pottawatomie County with the commission of the crime of burglary second degree, after former conviction of a felony. He was tried by a jury, in a two-phase trial, convicted, and punishment assessed at not less than two years and not more than six years in the state penitentiary. The case is here on appeal.

The information charged that this defendant, "while acting together in concert, aiding and abetting Harvey Day and Robert Ray Simmons, did, on or about the 2nd day of January, 1965, in the night time, break and enter into a certain building located at 202 South Union, Shawnee, Oklahoma, and the business occupying said building being known as Allen Lumber and Hardware Center, Inc., in the following manner, to-wit: by unlocking the outside south door to the back room of the retail store by inserting a knife blade into a defective key hole and twisting the knife blade to open the lock, turning the knob on the door to disengage the catch and thereby opening said door and entering said building thereby, with the felonious and burglarious intent then and there upon the part of the said Robert Lee Honeycutt to steal and carry away without the consent of the owner thereof, Allen Lumber and Hardware Center, Inc., certain personal property of value kept and contained in said building" etc.

In his motion for new trial defendant sets out nine assignments of error, and ten errors are listed in the petition in error. However, in his brief, counsel, for defendant argues his assignments under two propositions, the first of which is: "A conviction cannot be had upon the testimony of an accomplice unless he be corroborated by such other evidence as tends to connect the defendant with the commission of the offense, and the corroboration is not sufficient if it merely shows the commission of the offense, or the circumstances thereof."

It will be noted that this contention is in the exact words of the statute, Title 22 O.S.A. § 742.

Defendant contends that the corpus delicti of the crime of burglary was not proven by other testimony than that of the accomplice, Robert Ray Simmons. With this we do not agree.

In the case of Rushing v. State, 86 Okl. Cr. 241, page 244, 190 P.2d 828, page 831, this Court said:

"This is not a new question in this Court. We have had many cases in which this question was raised and we do not deem it necessary to enter into a detailed discussion of the cases and the law with reference thereto. Excerpts may be taken from the many cases which, if construed alone, would seem to sustain the position of the State or the defendant. It is only by an examination of the particular facts in each case and the application of the law to those facts, that it may be correctly determined whether the accomplice has been properly corroborated. The statute with reference to the corroboration of an accomplice is Tit. 22 O.S.1941 § 742, * * *."

There is no disputing the fact that both Robert Ray Simmons and Harvey Day were accomplices of this defendant. The court fully instructed the jury on the question of accomplices, and that as a matter of law these two witnesses were accomplices, and that it was necessary for the jury to find that their evidence had been corroborated before they could consider the same. The question arises as to how much corroborative evidence is necessary.

Witness Bill Holt, agent of the Oklahoma Bureau of Investigation, testified that he examined the premises of the

Allen Lumber and Hardware Center on Monday after the burglary on Saturday night, and could find no evidence of forcible entry; that he returned the next day, after talking with Charles D. Hill, another agent of the Oklahoma State Bureau of Investigation, and found a malfunctioning doorknob on the door leading into the room from which two skill saws were removed. He testified to removing the knob from the door, and the doorknob was introduced into evidence, over the objection of the defendant. This witness was permitted to demonstrate to the jury how the defective lock could be manipulated.

Peter M. Porter, manager of the Allen Lumber and Hardware Center, testified that the only manner in which entry into the stock room could be made, from the outside of the office, was through the door with the malfunctioning lock. He also testified that this defendant had worked for the lumber company from about the middle of October, 1964 until about Christmas of that year.

Robert Ray Simmons, who at the time of this trial was serving a sentence in the Oklahoma State Penitentiary for this same burglary, testified that he and Harvey Day left Oklahoma City on the night of January 2, 1965, drove to Shawnee, located this defendant through his girl friend, and picked him up between 11 and 11:30 p. m. That they drove around in Shawnee for a while, got something to eat, the defendant pointed out the Allen Lumber and Hardware Center where he had previously worked, and they decided to enter the lumber yard. That they went over the fence, and down a hall-way to a door that had a key broken off in the lock, and defendant opened the door by inserting the blade of a knife and turning the lock. They then went in and removed two skill saws from a display, and went out the way they had entered, closing the door behind them. They placed the saws in the trunk of Day's car, and drove to Oklahoma City.

He also testified that Harvey Day, during all of this time, was asleep on the back seat of his automobile.

When they reached Oklahoma City, witness contacted a man he knew only as "Toby" (and who he later learned was Charles G. Hill, an agent of the Oklahoma Bureau of Investigation); met Toby at a filling station on the east side of Oklahoma City, followed his car for a few blocks, stopped and opened the trunk of the car and made a deal with Mr. Hill, whereby Hill paid him $50 for the two power saws. He testified that the defendant and Day were present at the back of the car when the deal was closed and the money paid. They then had the car serviced, returned to Shawnee and left the defendant at the home of some girl, between 12 and 12:30 p. m.

Harvey Day testified that he drove from Oklahoma City to Shawnee with Robert Ray Simmons; they went to the home of the defendant, who got in the car with them, that he did not know what happened after that until they were back in Oklahoma City. That he was drunk and asleep on the back seat of the car. He awoke at a filling station and was told they were waiting for a man Simmons was to met there; that he lay back down and in a few minutes the man arrived, they followed him a short distance and stopped. Witness and Honeycutt got out of the car, and were at the back at the trunk when the deal was made, and the saws were sold to Mr. Hill. That Simmons later gave him and Honeycutt each $15. They drove back to Shawnee, and let Honeycutt out of the car, between 12 and 12:30 on Sunday afternoon.

Charles G. Hill testified that by appointment with Robert Ray Simmons he went to Fourth and Phillips, in eastern Oklahoma City on Sunday morning, January 2, 1965, and saw the three men seated in a car. They followed the car of witness to a point between Eighth and Ninth Streets on Kelly, where they all got out of the cars, witness was introduced to the defendant,

and witness made a deal with Simmons to buy two power saws for $50. He paid Simmons for the saws. He stated that in dealing with the three men, he asked where the saws came from "because I am going to want to sell them, and I would like to know the area that they came out of so that I will not return the saws to that area to try to sell them. At that time Mr. Honeycutt said that they came out of a burglary of a lumber yard in Shawnee, Oklahoma."

The defendant, his wife and father testified. Defendant stated that at five minutes before eleven, someone called him and said that Ray Simmons wanted to know where he lived; that Simmons arrived at his home, they rode around for a while, Simmons asked where defendant was working, and he showed him the Allen Lumber and Hardware Center where he had been working, that they ate, then drove to Oklahoma City, washed the car, went to a girl's house, defendant stayed in the car and didn't get out, and Simmons and Day, and Simmons' girl friend took him back to Shawnee about 12:15 in the afternoon. That he had known Simmons in the reformatory at Granite; that Simmons stole his boots when he left Granite, and never returned or paid for them; that they had words about the theft of the boots several times, the last time on January 3, 1965; that he had nothing to do with burglarizing the lumber company and did not know that it had been burglarized until he was arrested; that he did not tell Simmons or Day about the broken lock; that he did not see agent Hill on Sunday, January 3rd; that he did not see the two saws in the back of Day's car; that he had never seen agent Hill until the preliminary hearing; and that he did not receive any money paid by Hill. He admitted that he was with Simmons and Day from 11 o'clock Saturday night until 12:15 Sunday noon.

When all the evidence presented and the facts and circumstances are considered, it is our opinion that they were sufficient to constitute that degree of corroboration required by the statutes.

Defendant's second proposition is: "The admission in evidence over the defendant's objection of an order revoking the suspension of the original judgment and sentence reciting that the court had heard the testimony of five witnesses to the effect that the defendant was guilty of burglary second degree and vacating suspension order on which sheriff's return had been made by sheriff showing transportation of defendant to state penitentiary and warden's receipt for defendant attached to original judgment on the back of which was order suspending original judgment and sentence, all attached together and offered and admitted as Exhibit 7, constitutes most flagrant violation of the defendant's rights while on trial and this court cannot say such error was harmless error."

■ We do not completely agree with counsel's statement. In the case of Tice v. State, Okl.Cr., 283 P.2d 872, this Court said:

"It has been held in this jurisdiction that the best method of proving a prior conviction is made, first by offering in evidence the indictment, or information, judgment, sentence, and commitment. Proof of the fact should then be made that the defendant, in the case on trial, is one and the same person as the defendant in the prior conviction relied upon to establish the offense of a second or subsequent conviction. Further proof should be made that the judgment and conviction is final, and not appealed from, or if appealed from, that final disposition has been made of the same, adverse to the defendant. If the defendant's judgment and sentence has been suspended, that fact should be shown." [Citing cases.]

■ We are of the opinion that it is not proper, when proving the allegation of prior convictions, to introduce the information or indictment into evidence. That

portion of the record is merely the charge made against the defendant, which the State expects to prove. Quite often, the proof offered by the State falls short of the allegations contained in the information or indictment, and the defendant is either found not guilty, or found guilty of a lesser included offense. Consequently, at a subsequent trial on another charge, when the information or indictment is introduced into evidence, and submitted to the jury, it may materially prejudice the defendant in his trial.

We therefore hold that the statement found in Bird v. State, 85 Okl.Cr. 313, 188 P.2d 242, is the correct procedure, wherein this Court said:

"Where one is charged with a felony and it is alleged in the information that defendant had been previously convicted of a felony, the introduction in evidence of the judgment, sentence, and commitment, or proof of the suspension of the sentence by the trial court, and the identification of defendant as the person who was sentenced, was sufficient to prove the prior conviction, where there was no evidence to the contrary."

It is our opinion that the statement in the order revoking the suspension of the original sentence of this defendant, that, "The Court having heard the testimony of five witnesses to the effect that the defendant was guilty of burglary second degree, does find that the suspended sentence heretofore awarded the defendant on the 20th day of June, 1963 should be vacated and set aside", was not so prejudicial to the defendant as to require a reversal of this case; and that the trial court did not commit error in admitting Exhibit 7 in the form offered, into evidence.

For the reasons herein stated, the judgment and sentence of the district court of Pottawatomie County is affirmed.

NIX, P. J., and BUSSEY, J., concur.