Larry Gale **LINEBARGER**, Appellant,

v.

The **STATE** of Oklahoma, Appellee.

No. F–74–265.

Court of Criminal Appeals of Oklahoma.

Sept. 30, 1974.

E. Terril Corley, Tulsa, for appellant.

Larry Derryberry, Atty. Gen., James L. Swartz, Asst. Atty. Gen., James D. Bednar, Legal Intern, for appellee.

## OPINION

BUSSEY, Judge:

Appellant, Larry Gale Linebarger, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Tulsa County, Case No. CRF–73–565, for the offense of Larceny of an Automobile, After Former Conviction of a Felony, in violation of 21 O.S.1971, § 1720. His punishment was fixed by jury at a term of twenty five (25) years in the state penitentiary, and from said judgment and sentence a timely appeal has been perfected to this Court.

At the trial Wesley Raymond McKinney testified that he was the President of Guaranty Loan and Investment Corporation of Tulsa, Oklahoma. In March of 1972, his firm had a loan with a Mr. Carl Jenson, on a 1966 Pontiac hardtop coupe. He testified that at the time of making the financing statement on the automobile, Mr. Jenson told him that the serial number of the car ended with the numbers 0028. He further testified that Mr. Jenson was having financial problems and the loan was not going to be paid off. Thus he suggested to Mr. Jenson that the car be delivered to Mr. Gene Vire, a dealer who might attempt to sell the vehicle and the proceeds of the sale then would be applied to the loan. He testified that at no time did he give anyone other than Mr. Jenson or Mr. Vire permission to take or use the car.

Carl C. Jenson testified that in March of 1972, he was having financial difficulties and he went to Guaranty Loan and Fi-

nance to talk with Wes McKinney. He asked Mr. McKinney to help him sell his white 1966 GTO. He said Mr. McKinney advised him to take the car to Mr. Vire's car lot which he did. He stated the next time he saw the car was four or five months later in the back of Mr. Vire's shop. At that time, the car was still a white 1966 GTO. The next time he saw the car was in the "police impounding place." (Tr. 50) At that time, the car was a tan GTO, but he noticed particular characteristics by which he identified the car to be the white 1966 GTO which he had left with Mr. Vire. He further stated he did not give anyone permission to use or take the car other than Gene Vire and Wes McKinney.

Gene Vire testified that he was in the auto repair business and had been for about two years. In March of 1972, Carl Jenson delivered a white 1966 GTO to him to sell. He stated that on November 22, 1972, he took the car to a Dealer's Auction to sell it across the auction block. He further testified that on that day the car had the serial number 242176 K 120028, and 1972 tag number ZY–4436, and that he had this car checked in and registered at the Dealer's Auction. A week later he returned to the Dealer's Auction and found the car was gone. He stated that after contacting everyone pertinent to the auction, he determined the car was stolen. Thereafter, he turned in a stolen car report to the Police Station in Tulsa County. He further testified that the next time he saw the car was in the spring of 1973. At that time the car was tan, but by particular characteristics he identified the car to be the same car he had taken to the Dealer's Auction.

Gregg Howard testified that he was the manager of Dealer's Auto Auction and had been for about two and one-half years. He produced in Court the record of sales of cars that were sold on November 22, 1972, and the consignment sheet recording all the cars which were consigned for that particular sale. He stated that such records were under his care, custody and control, and further that directions in filling out such records were supplied to all employees. He testified that the records indicated the white 1966 GTO was received by them and that a subsequent sale was not made. He further stated he knew said car to be on the lot on Thursday, November 23, 1972, because on that morning, pursuant to an appointment, Sharon Linebarger and an unidentified man came and looked at the car. He testified that he conversed only with Sharon Linebarger and that he was never close enough to the man to identify him. He also stated that subsequent to November 23, 1972, Mr. Vire came to see about the car, at which time, a determination was made that the car was no longer on the lot. Lastly, he testified that he never gave anyone permission to remove the 1966 GTO permanently from the lot.

Donald Gene Caywood testified he was the owner of a paint and body shop on 11th Street. In November of 1972, he owned a gold 1966 GTO which was inoperable due to having been wrecked. On November 29, 1972, he sold the gold GTO to the defendant. He testified he gave the defendant an Oklahoma title to the car and that subsequently, that afternoon, the Crain Wrecker Service came and hauled it out of his shop.

Jackie Dan Burks testified he was employed by Crain's Wrecker Service in November of 1972 and had been for approximately six or seven months prior thereto. He stated that on November 29, 1972, he received a call to pick up a particular 1966 GTO body which he did from Mr. Caywood on 11th Street and that he delivered that car body to Porta Body Shop. On cross-examination he stated that Carmen Angus received delivery of the car body at Porta Body Shop and that she was the one who paid him.

Carmen Angus testified she was the owner of Porta Body Shop. She stated that on November 29, 1972, a wrecked gold 1966 or 1965 GTO was brought to her shop. She further stated that the car be-

longed to the defendant and that the defendant later took a fender off the car. She further testified that she and her husband waited two months after the car first appeared at the shop for the defendant to return and finish the work he was supposed to do for them. When he failed to return, they called a wrecker service to come tow the car away.

Lewis Bumpers, Jr. testified he owned a paint and body shop on 905 East Apache. He stated that on December 6, 1972, he purchased a gold 1966 Pontiac from the defendant. He received a title for the car from the defendant on which the tag and serial numbers matched those on the car, ZC–3889 and 242076 K 141305 respectively. He identified a cancelled check he had given to the defendant on December 6, 1972, which bore the indorsement of the defendant. He stated that he gave the defendant another $100.00, in cash in addition to the $150.00 check. He further testified that during the course of the sale the defendant commented on the fact that the car had been freshly painted by himself and another person. He stated on cross-examination that the defendant later called him after the fact was brought out that the car was stolen.

Dale L. Bradley testified that he was a police officer of the City of Tulsa wherein he was assigned to the Auto Theft Detail. He was investigating the theft of a white car with the serial number ending in 0028 and the tag number being ZY–4436. In the course of his investigation he went to the address of the person to whom Mr. Bumpers had sold the car. He stated the "public number", serial number on the car, ended with the numbers 1305, but the "confidential number" stamped on to the frame ended in the numbers 0028. He stated that on the vehicle in question, the rivets used to attach the "public" serial number were not of the type normally used on such a car.

Gary William Wise testified that he was a mechanic at Henry's Wheel Aligning in Tulsa, Oklahoma. On November 30, 1972,

he performed a state inspection on a 1966 GTO which was brought in by the defendant. He stated the serial number on the car ended in the numbers 1305. He said the car was gold, but it looked like it had just had a new paint job. He further testified the tag number was ZY–3389.

The State then rested.

Johnny Stafford testified he accompanied the defendant to the garage to get the vehicle inspected. He stated he went with the defendant to Caywood Automotive to purchase the car body in question. On the way to Caywood's, the defendant told him that he was going to see about buying a car for "these people" and possibly make a profit on the purchase for himself. He further testified that the defendant purchased a car for $80.00 and made a profit of $20.00 on the purchase as he had been given $100.00 to pay for the car. He testified the next time he saw the car was in front of Porta Body Shop.

Earl Holmes testified that he had purchased a 1967 GTO from the defendant; that the car had a cracked windshield and the defendant had promised him a new windshield. He stated that needing the new windshield, he went over to the defendant's residence. The defendant made a phone call and thereafter gave him $10.-00 and told him to go to an address where he could get the new windshield. He stated he went to Porta Body Shop and picked up the windshield which he learned had come out of a 1966 GTO which was parked in front of Porta Body Shop.

Danny Raines testified to essentially the same facts as Earl Holmes, except that he did not overhear any conversation between Holmes and the people at Porta Body Shop.

The defendant then took the stand to testify in his own behalf. He testified he was 38 years old and was employed as a welder for Albert and Harlow Equipment. He stated he had been convicted of the crimes of robbery, burglary and uttering a forged instrument. He acknowledged he had in fact taken the car in question to

have it safety inspected at the direction of Carmen and Gerry Angus, and stated that the car belonged to them. He testified that he bought the car in question from Angus and he later sold the car to Bumpers, not knowing the car was stolen. He acknowledged that he had in fact purchased a car from Mr. Caywood, but that he was sent by Carmen and Gerry Angus. He said he did not pay the wrecker to bring the car back to Porta Body Shop.

The defense then rested.

In rebuttal the State called Gerald Charles Angus. He testified he was the owner of Porta Body Shop and that he was acquainted with the defendant. He denied ever sending the defendant to Caywood Automotive to purchase a 1966 GTO, denied requesting him to get the car safety inspected, and further denied ever selling the car to the defendant. He did acknowledge having sold a windshield to a Mr. Holmes and that he had taken it out of the wrecked car in question. He stated this was two or three months after the car had been parked in front of the shop. He further testified that he gave the car to Carroll's Salvage.

Thereafter both sides rested.

The defendant's first proposition of error asserts the trial court erred in permitting Gregg Howard's testimony as to the presence of Sharon Linebarger at Dealer's Auto Auction. We have examined the testimony that defendant cites as improper. We find that the trial court properly admonished the jury (Tr. 85) after the witness testified he had seen Mrs. Linebarger at the Dealer's Auction on the morning of Thursday, November 23, 1972. (Tr. 77–80) We have previously held that when the trial court properly admonishes the jury to disregard a remark, and the remark which is objected to does not constitute fundamental error, a reversal on appeal will not lie. See Montgomery v. State, Okl.Cr., 447 P.2d 469. We are of the opinion that this remark now complained of by the defendant was not such as to improperly influence the jury.

The defendant further argues that even though the jury was admonished, the witness was allowed thereafter to testify that the person he saw was Sharon Linebarger. (Tr. 86) A careful reading of the record reveals that such testimony was not improper because the witness was testifying as to his personal knowledge which was composed of his seeing the individual on November 23, 1972, and later being told her correct name after identifying the same person at the preliminary hearing. (Tr. 86) Thus for the aforesaid reasons, we find the defendant's first proposition of error to be without merit.

The defendant's second proposition of error asserts that the State's closing argument contained improper remarks with regard to past convictions of the defendant, and that the jury listened to the remarks of the State to the detriment of the defendant. The instances of which the defendant now complains appear in the record as follows:

"Of course, Larry Linebarger's going to make a check out that says his name. He knows he's already done time on one forgery, and it's awful hard to pass a check." (Tr. 276)

In the case of Kennamer v. State, 59 Okl.Cr. 146, 57 P.2d 646 (1936) and cited with approval in Klinekole v. State, Okl. Cr., 456 P.2d 623 (1969), this Court held:

" 'The right of argument contemplates a liberal freedom of speech, and the range of discussion, illustration, and argumentation is wide. Counsel for both the state and the defendant have a right to discuss fully from their standpoint the evidence and the inferences and deductions arising from it. It is only when argument by counsel for the state is grossly improper and unwarranted upon some point which may have affected defendant's rights that a reversal can be based on improper argument.' "

We are of the opinion that the instances now complained of by the defendant were proper inferences and deductions to be drawn from the evidence and thus we find

this proposition of error to be without merit.

■ The defendant's third proposition of error asserts that the jury's verdict of finding the defendant guilty after having formerly been convicted of a felony in the second stage of the proceedings was contrary to the evidence. The defendant further argues in support of this proposition that there is no affirmative showing in the record that the convictions alleged in the second stage were final. The record reveals that the defendant's two prior convictions now in question were entered by the State into evidence in Exhibits 8 and 9. Such Exhibits are certified copies by the Court Clerk of Tulsa County of the judgments and sentences, along with the respective appearance dockets. A review of these Exhibits proves the judgments and sentences of the defendant, and it shows the absence of any intent by the defendant to appeal on either conviction.

We thus find the record, coupled with defendant's stipulation at trial to these judgments and sentences in question, sufficiently establishes these judgments and sentences as conclusive and thus final. For these reasons we reject this proposition of error.

■ The defendant's fourth proposition of error alleges that the trial court erred in permitting the testimony of the witness, Gregg Howard, as to the business records of Dealer's Auto Auction. Defendant argues that these business records may only be admitted as affirmative evidence and can never be admissible to establish a negative proposition. In the present case, the business records by an entry indicate that the car in question was checked in at Dealer's Auto Auction; yet the absence of an entry on the list of cars having been sold indicates the car was not sold. To this the defendant objects. The defendant relies on L. J. Brosius & Co. v. First Nat. Bank of Noble, 65 Okl. 128, 174 P. 269 (1918). The same Court in Sharp v. Pawhuska Ice Co. et al., 90 Okl. 211, 217 P. 214 (1923), commented on the application

of such a rule of law regarding proof of a negative proposition using the absence of an entry in the records of regularly conducted activity. The Court said in part:

"In fact, we are unable to conceive of any kind of evidence which does not, in a measure, partake of both an affirmative and negative character. We can conceive of no character of evidence which does not have both an affirmative and negative effect. If it proves an affirmative, it thereby logically disproves the reverse."

The trend of authority supports this reasoning that a matter which is normally included in the memoranda, reports, record or data compilations, in any form of a regularly conducted activity, may be used to prove the existence or non-existence of that matter. See United States v. DeGeorgia, 420 F.2d 889 (9th Cir. 1969); McClanahan v. United States, 292 F.2d 630 (5th Cir. 1961).

We therefore find the trial court correct in allowing this witness' testimony, for the reasons that these business records were kept in the course of regular business, that the records indicate the car was checked in and whether or not the records indicate the car was sold. For these above stated reasons, we find this proposition of error to be without merit.

■ The defendant's fifth proposition of error alleges that the trial court erred in permitting the State of Oklahoma to ask the defendant about the length of time he received on his previous sentences. The defendant relies on Davis v. State, Okl.Cr., 489 P.2d 789 (1971), wherein this Court held that questions by the State as to the time the accused actually served on previous convictions was highly improper.

In the present case, the State did not ask the defendant the time he actually served on his prior convictions. The State only asked the sentence which he received on each of his prior convictions. A careful reading of the record reveals that the State was eliciting indirectly that the defendant did not serve the entirety of his

sentences he had received on his prior convictions. This is evidence from the testimony which shows the defendant was convicted of other crimes before the time had expired to which he was sentenced on a previous conviction. We find this manner of questioning the defendant by the prosecutor was improper in view of the reasoning in *Davis,* supra. However, we hold these improper questions by the prosecutor do not constitute fundamental error which would inflame the passion and prejudice of the jury and thereby cause a reversal to follow. Therefore, we find this error harmless in view of the entire record. See 20 O.S.1971, § 3001.

■ The defendant's sixth proposition of error asserts that the trial court committed reversible error in failing to swear in the bailiff, citing 21 O.S.1971, § 390. In the present case the record is absent of any writing evidencing an oath having been taken by the bailiff; yet the bailiff's oath may have been taken orally which is also provided under the statute which the defendant cites. This Court will never presume error. See Feil v. State, 81 Okl. Cr. 133, 161 P.2d 770 (1945). Under such a state of the record this Court finds that no prejudice resulted to the defendant by reason of the failure to swear the bailiff, or, if in fact, the bailiff was not sworn. Therefore, we reject this proposition of error.

■ The defendant's seventh assignment of error alleges that the verdict is not supported by the evidence. We have consistently held that where there is competent evidence in the record from which the jury could reasonably conclude that the defendant was guilty as charged, the Court of Criminal Appeals will not interfere with the verdict, even though there is a sharp conflict in the evidence and different inferences may be drawn therefrom, since it is the exclusive province of the jury to weigh the evidence and determine the facts. See Jones v. State, Okl.Cr., 468 P.2d 805.

■ The defendant's eighth proposition of error alleges that the defendant was deprived of a fair trial due to the accumulation of errors and irregularities in the trial when considered as a whole. This Court has held that "numerous irregularities" must be present for the relief the defendant here seeks to be granted. See Lovell v. State, Okl.Cr., 455 P.2d 735 (1969). We therefore find no such numerous irregularities and thus no aggregate of errors to produce prejudice to the defendant. Pursuant to the above stated reasons, we find this proposition to be without merit.

■ The defendant's final proposition of error asserts that the punishment is excessive. We need only observe that the punishment was well within the range provided by law, and does not shock the conscience of this Court. See Turner v. State, Okl.Cr., 479 P.2d 631 (1971).

In conclusion, we observe the record is free of any error which would justify modification or reversal. The judgment and sentence is accordingly, affirmed.

BLISS, P. J., concurs.

BRETT, J., concurs in results.