**Paul CERVANTES, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–76–209.**

Court of Criminal Appeals of Oklahoma.

Nov. 10, 1976.

Rehearing Denied Dec. 14, 1976.

Robert S. Durbin, Asst. Public Defender, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., for appellee.

## OPINION

BUSSEY, Judge:

Appellant, Paul Cervantes, hereinafter referred to as defendant, was charged, tried and convicted for the crime of Robbery with Firearms, After Former Conviction of a Felony, in the District Court, Tulsa County, Case No. CRF–75–1258, in violation of 21 O.S.Supp.1974, § 801. Trial

was had before a jury on the 17th day of September, 1975, and in accordance with the jury verdict, the defendant was sentenced to serve a term of One Hundred (100) years' imprisonment. From said judgment and sentence a timely appeal has been perfected to this Court.

This was a bifurcated trial, held in accordance with the laws of the State of Oklahoma. In the first stage, the State called two witnesses in its case in chief. The first witness, Judy Fisher, testified that she was the victim of the armed robbery. More specifically, she testified that she was employed at 5829 South Peoria, Tulsa County, Oklahoma, and that on the 10th day of June, 1975, she went to work at 11:00 p.m. until 7:00 a.m. on the 11th day of June, 1975. She testified that while she was busy working, and at approximately 3:00 a.m., a car containing two occupants pulled up outside the store and that one of the occupants on the passenger side was a male and the one in the driver's seat was a female. She testified that the male got out of the car, entered the store and asked for a package of cigarettes, at which time she went to the counter to obtain the cigarettes, handed them to him, he paid for the cigarettes and started to leave. She further testified that instead of going completely to the door, the individual returned, pointed a double-barrel sawed-off shotgun at her and demanded that she take out all of the money from the cash register and put it in a paper sack. He then demanded the money in the safe but she told him that it would be impossible, as the safe was locked and she did not have the combination. He then stated he would hate to have to shoot her and ordered her to walk to the back of the store. While walking to the back of the store, the shotgun discharged, striking and damaging a case containing food products. However, the witness was not injured. She testified that the assailant was dressed in red and white pin-stripped pants, light colored shirt, and a reddish jacket.

She then identified State's Exhibits Nos. 2, 3 and 4 as the items of clothing worn by the assailant on the night in question. She also identified State Exhibit No. 1 as looking like the shotgun used by the assailant on the night in question. [Tr. 14] She further testified that approximately $70.00 was taken in the robbery consisting of coins and bills in denominations of ones, fives, tens and twenties. Certain of the coins were packaged in rollers.

She then identified the defendant, Paul Cervantes, as the person who committed the robbery. [Tr. 18] She further testified that at no time did she give permission to the defendant to take the money belonging to U–Totem.

The final witness for the State was Officer Curt Hanks, who testified that he is a police officer in the City of Tulsa, working on the Robbery and Homicide Division of that department. He identified the defendant and stated that he was assigned to investigate the robbery at the U-Totem Store in question when he arrived at work at 7:15 a.m., on the 11th day of June, 1975. He was told that Paul Cervantes was a suspect in the robbery and that Cervantes could be located at the Villager Apartments at 1050 East 61st Street, Apartment 64, Tulsa, Oklahoma. Officer Hanks then proceeded to that location along with other officers. Upon entering Apartment 64, he saw Paul Cervantes asleep on the couch. Officer Hanks then put Paul Cervantes under arrest. He then identified State's Exhibits 2, 3, and 4, i.e., items of clothing previously identified by the first witness, as being items he found on the couch next to the defendant. He testified that he also observed in the apartment, a coffee table with certain items thereon, including a paper sack containing a quantity of coins, two shotgun shells and some cigarettes. In going through the pockets of the clothing marked State's Exhibits 2, 3, and 4, Officer Hanks found $155.00 in bills, change totaling $3.32, a wallet and two shotgun shells, all of which were admitted into evidence.

Officer Hanks then testified that one of the officers with him found a sawed-off shotgun in the linen closet of said apartment, along with two boxes of shotgun shells. These items were offered and placed into evidence. Hanks testified that the defendant was advised of his constitutional rights, and that he acknowledged that he understood them. The defendant then told Hanks that he had been out drinking and could not remember any of his activities. Officer Hanks testified that there was no appearance of any intoxication on the part of the defendant, although he could tell there had been some drinking.

On cross-examination, Officer Hanks testified that the management of the apartment was consulted prior to the officer's entry. Another officer had talked to Judy K. Fisher and she had identified Paul Cervantes from photographs.

On re-direct examination, Officer Hanks testified that upon entering Apartment No. 64, he observed the defendant in his shorts and the clothing marked State's Exhibits 2, 3 and 4, which had been identified by Judy K. Fisher as the clothes worn by the assailant, were on the couch next to defendant.

Judy K. Fisher was then recalled for further cross-examination, primarily at the request of defense counsel, for the purpose of impeachment regarding the items of clothing worn by defendant. Defense counsel pointed out that she had described the slacks as tan in color at the time of the preliminary hearing. On re-direct, witness Fisher testified that she misidentified the color due to nervousness at the court appearance at the time of preliminary hearing.

The State rested, the defendant demurred, which was overruled, and the defense rested.

For his first assignment of error, the defendant alleges that the court erred in refusing to grant defendant's pre-trial Motion for Continuance. More specifically, the defense alleges the Court erred in refusing to grant his Motion for Continuance due to the fact that a highly publicized case concerning an armed robbery in Tulsa County had just recently occurred. Defendant asserts that a continuance would have allowed time for adverse pre-trial publicity to subside. It was conceded by the defendant that the publicity concerned a separate and distinct incident which did not affect the accused or his counsel and the case at bar. The newspaper article in question in no way involved the defendant or this case, but merely dealt with an occurrence of a similar crime in Tulsa County.

■■■ This Court has repeatedly held that in order to justify a continuance, the movant must carry the burden of proof of showing its necessity. See, *Reid v. State*, Okl.Cr., 478 P.2d 988. The question of continuance then would rest solely in the discretion of the trial court. In *Prichard v. State*, Okl.Cr., 539 P.2d 392 (1975), this Court held that in the absence of evidence of prejudice resulting from newspaper articles concerning defendant and in view of the fact that voir dire of the jury indicated that defendant could obtain a fair trial, the defendant did not sustain burden of proving bias and prejudice in support of his Motion for Continuance. While the record is incomplete regarding the entire voir dire of the jury in the instant case, the defendant does provide us with one page of that voir dire, at page 5 of the transcript which states:

"(All voir dire was made a part of the record, but has been requested by defense counsel to be deleted from this transcript, except the following:)

"THE COURT: From time to time there are stories in the newspapers about crimes similar to this one. Is there anything about that fact that would affect your judgement [sic] in any way?

I take it then, from your silence there is not."

We are of the opinion that these questions and answers satisfy the requirements

laid down in *Stidham v. State*, Okl.Cr., 507 P.2d 1312 (1973), particularly, as in the instant case, where the pretrial publicity concerned a separate incident which did not affect this particular defendant, his counsel, or the trial court. Moreover, we are fortified in this conclusion by virtue of the fact that the voir dire examination of all the jurors was a part of the record and all but the statement of the Judge quoted above, was deleted at his request. It thus is readily apparent that there was nothing in the deleted portion of the voir dire examination which would support counsel's present argument, or indeed, he would have designated it.

Having found that the trial court conformed with the dictates in *Stidham v. State*, supra, and that there was no showing on the part of defendant that he was prejudiced by any pretrial publicity existing at that time in Tulsa County, we find this assignment of error to be without merit.

■ Defendant's second assignment of error alleges that the trial court erred in allowing the District Attorney to make improper comments during both stages of the bifurcated trial. In the first stage of the proceedings the defendant objects to the following language, stated by the prosecutor:

> "There will be, I anticipate, from the evidence and your verdict of guilty when you decide and retire and deliberate this evidence another time, for if your deliberations—"

Defendant objected to this as referring to further proceedings which might be held in the case and cites *Bell v. State*, Okl.Cr., 381 P.2d 167 (1962), as his authority. The *Bell* case is distinguishable on its facts. That case involved a murder prosecution wherein the County Attorney made an obvious comment that the parole system is such that convicts are released after serving only half their sentence. The case at bar involves no such comment. At no time did the prosecutor allude directly or indirectly to the defendant's prior record. His statements might have, had they been allowed to continue, refer to a bifurcated trial. However, we note, the defendant properly objected before the prosecutor could finish his statement. It was then the defense attorney himself made reference to a bifurcated trial:

> "MR. DURBIN: Now I beg the Court's indulgence. I must object on the grounds this is highly improper. Without getting too deeply in it, as the Court is aware, is an improper comment on the part of the State of Oklahoma regarding any further proceeding which might be held in this case. I ask that it be stricken. I move for a mistrial and ask the jury be admonished to disregard it.
>
> "THE COURT: Motion for mistrial will be denied. We will instruct the jury to disregard any of the comments about other proceedings. The only issue at this time is guilt or innocence." [Tr. 105–106]

This Court has previously held in *Songer v. State*, Okl.Cr., 464 P.2d 763 (1969), that where the evidence against the defendant is strong and the trial court properly admonishes the jury, the error is sufficiently cured.

■ The next comment alleged to be improper is found on page 124 of the trial transcript wherein the prosecutor stated:

> " . . . And yet, counsel would have you to speculate and guess that there is something wrong with Judy Fisher's identification of this man, Paul Cervantes. Ladies and gentlemen, if there was something wrong with it, it wouldn't have been introduced into evidence. There is a remedy for that counsel says, and that is logic."

This Court finds nothing in the above statement which is prejudicial to the defendant. It does not blatantly accuse anyone of perjury or false testimony but sim-

ply makes a correct statement of the law of evidence in the State of Oklahoma.

■■■ The defendant turned to the argument made by counsel in the second stage of the trial for his next assignment of error, at that point the defendant objected to the following statement made by the prosecutor:

"I want to recommend something I have never done. Big time, big time for this case." [Tr. 141]

The defendant also objected to some seven other comments made by the prosecution during his closing argument in the second stage of the bifurcated trial. After a careful examination of the record in this case, we find that none of the statements made by the prosecutor require reversal in this case. In each instance where the defendant timely objected and the trial court found some grounds for his objection, the jury was properly admonished to disregard the statement made by the prosecutor. The right of argument to the jury contemplates a liberal freedom of speech and a wide range of discussion, illustration, and argumentation. See, *Cardwell v. State,* Okl.Cr., 300 P.2d 679 (1956). Also, in *Matthews v. State,* Okl.Cr., 530 P.2d 1044 (1975), this Court cited with approval *Kitchens v. State,* Okl.Cr., 513 P.2d 1300 (1973), wherein we held:

"The court's admonition to the jury not to consider the remarks of counsel, or a witness, usually cures an error unless it is of such a nature after considering the evidence that the error appears to have determined the verdict."

From a careful examination of the record, we find that the alleged error did not determine the jury's verdict in this case, as there was sufficient evidence for conviction.

For his final assignment of error the defense alleges that the proof was insufficient to find the defendant guilty of the After Former Conviction of a Felony portion of the trial. More specifically, the defendant urges that the mere reading of a certified copy of a Kansas case record was insufficient to establish that this defendant was convicted of a prior felony and that said conviction is now final.

■■■ We note that the defendant objected when the State initially attempted to introduce the judgment and sentence into evidence. This objection was based upon the fact that the judgment and sentence reflected that the defendant had two prior convictions while the Information filed against the defendant in the instant case reflected that he had only one prior conviction. The trial court properly ruled that the judgment and sentence should not be shown to the jury for the above reason. The trial court then allowed the District Attorney to read to the jury that portion of the prior judgment and sentence which had been alleged in the Information at bar. The defendant admitted that the judgment and sentence was properly authenticated. The most specific of defendant's arguments in this regard goes to the question of whether or not sufficient evidence was presented to the jury from which they could find that the prior conviction was a final judgment and sentence. This Court stated, in *Honeycutt v. State,* Okl.Cr., 432 P.2d 124, in the second paragraph of the Syllabus:

"Proof of a prior conviction should consist of: first, judgment, sentence, and commitment; second, proof of the fact that the defendant on trial is one and the same person as the defendant in the prior conviction relied upon to establish the offense of a second or subsequent conviction; third, that the judgment and conviction is final, and not appealed from, or if appealed from, that final disposition has been made of the same, adverse to the defendant. If the defendant's sentence has been suspended, that fact should be shown."

However, in a more recent case this Court decided that such proof could be had cir-

cumstantially. In *Linebarger v. State,* Okl.Cr., 527 P.2d 178, we stated:

". . . The record reveals that the defendant's two prior convictions now in question were entered by the State into evidence in Exhibits 8 and 9. Such Exhibits are certified copies by the Court Clerk of Tulsa County of the judgments and sentences, along with the respective appearance dockets. A review of these Exhibits proves the judgments and sentences of the defendant, and it shows the absence of any intent by the defendant to appeal on either conviction.

"We thus find the record, coupled with defendant's stipulation at trial to these judgments and sentences in question, sufficiently establishes these judgments and sentences as conclusive and thus final. . . ."

In the case at bar the defendant did not, in fact, stipulate as to the judgment and sentence. While this Court does not specifically overrule the holding laid down in *Honeycutt v. State,* supra, and *Linebarger v. State,* supra, we do, however, hold that with respect to the instant case, there was sufficient evidence to submit the question of After Former to the jury. Essentially, there was evidence that the conviction occurred some fifteen years ago in the State of Kansas, the jury was informed that the defendant had plead guilty to said offense. There was a complete and total lack of contradictory evidence on the part of defendant that the judgment and sentence from the Kansas court was not final. Therefore, taking all the facts of this case together, we hold that for the specific instance of this case and without purposely overruling any former holdings of this Court, that there was sufficient evidence from which the jury could find that the defendant had a prior conviction in the State of Kansas in 1960, and thus could enhance his punishment.

Therefore, finding no error in either stage of the trial which would require re-

versal or modification, we are of the opinion that the judgment and sentence appealed from should be, and the same is hereby, *AFFIRMED*.

BLISS, J., concurs.

BRETT, P. J., concurs in results.